DANIEL N. CROUSE et al., Respondents, *v.* LAURA FROTHINGHAM et al., Appellants.

If the declarations of a party can, under any circumstances, be received to raise a trust or create an interest in lands in another, as to which *quære*, they must be clear and explicit, and point out with certainty the subject-matter and the extent of the beneficial interest.

Equity cannot, under any circumstances, compel the performance of a parol agreement, vague in its terms, and standing upon testimony of the accuracy of which the witness is himself uncertain.

In an action brought by plaintiffs as judgment creditors of the defendant R., to have certain real estate in which they claimed R. had an interest charged with the payment of their judgment, the court found that R. being the owner of the land, by procurement of the defendant A. F., conveyed it to the wife of the latter, by deed, reciting a consideration of $2,300; that as a further consideration it was agreed between R. and A. F. that the former should have the use for three years of the cellar and first floor of the building to be erected upon the premises. The only evidence upon which the last finding was based was testimony of admissions made by R. after the conveyance and in the absence of A. F., except the testimony of one witness as to a conversation with A. F. and R., in which the former said he had bought the premises, and that R. was to have the use for " either several years or two or three years," the witness could not say which as it was out of his memory. *Held,* that the evidence was insufficient to sustain the finding ; but if sufficient to establish an agreement to give A. F. the use of any portion of the premises, it was in the nature of a lease, and as it was by parol, and for more than a year, it was void by the statute of frauds (2 R. S. 135, § 6) ; and that it was not such a contract as equity would decree performance of.

After the execution of the deed, and before the recovery of plaintiffs' judgment, R. made a general assignment for the benefit of his creditors. The assignee accepted the trust, entered upon the performance of his duties, and it appeared that the assignor's debts greatly exceeded his assets. *Held,* that if R. was then entitled to a lease, or to any benefit in the premises, the right passed to the assignee, and plaintiffs had no claim which they could enforce against it.

*It seems* that if such an assignee refuses, in a proper case, to proceed and get in the assigned property, the creditors collectively. or one in behalf of all who may come in and join, may compel the execution of the trust in equity, or may cause the removal of the assignee, and the appointment of another.

In either case, however, a decree for a single debt would be erroneous; the decree must follow the assignment, and the fruits of a recovery be distributed according to its terms.

*F. S. Bank* v. *Leggett* (51 N. Y. 554), distinguished

*Crouse* v. *Frothingham* (27 Hun, 123), reversed.

(Argued October 6, 1884 ; decided October 21, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, entered upon an order made May 2, 1882, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term. (Reported below, 27 Hun, 123.)

The nature of the action and the material facts are stated in the opinion.

*R. A. Stanton* for appellants. Declarations made by the grantor of premises, after he has sold the same, even though he continue in the occupation of them to the time of making such declarations, are not competent evidence as affecting the rights of the grantee. (*Vrooman* v. *King*, 36 N. Y. 477; *Eckford* v. *De Kay*, 8 Paige, 101; Abbott's Trial Evidence, 711; *Foote* v. *Beecher*, 78 N. Y. 157.) If a party puts upon the stand a witness who is for any reason assailable, that party asserts or admits the credibility of that witness. (*Pollock* v. *Pollock*, 79 N. Y. 152; Code of Civ. Pro., § 838; *Weaver* v. *R. & W. R. R. Co.*, 3 T. & C. 270; *Branch* v. *Levy*, 11 N. Y. Weekly Dig. 326.) Evidence of confessions of a party should always be scrutinized and received with caution, as it is the most dangerous evidence that can be admitted, and the most liable to abuse. (*Law* v. *Merrils*, 6 Wend. 268; *Barrett* v. *Carter*, 3 Lans. 72; *Harrison* v. *Aiken*, 2 Barb. 2; *Page* v. *Cagwin*, 7 Hill, 381.) Oral admissions of Randolph or Frothingham, even if admissible as against Mrs. Frothingham, the grantee, cannot have the force of creating or reserving an interest in the real estate in Randolph, the grantor, which can only be created by a written instrument. Nor can they be permitted to contradict the terms of the deed itself. (2 R. S., §§ 6, 7; *Cook* v. *Barr*, 44 N. Y. 156, 160, 161; *Sturdevant* v. *Sturdevant*, 20 id. 39; *Dillaye* v. *Greenough*, 45 id. 445; *Wheeler* v. *Reynolds*, 66 id. 66.) The mere refusal to perform a parol agreement void under the statute of frauds may be a moral wrong, but it is, in no sense, a fraud in law or equity. (*Wheeler* v. *Reynolds*, 66 N. Y. 234, 235, 237.) The provision of the statutes as to fraudulent conveyances should not be construed in any manner to affect or impair the title of a purchaser for valuable consideration, unless it appears that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor. (R. S., part 2, chap. 8, title 3, § 5; 3 R. S. [Banks' 6th ed.] 146; 2 R. S. [Edmonds' ed.] 142; *Sterns* v. *Gage*, 79 N. Y. 102; *Parker* v. *Connor et al.*, 93 id. 126.) The vendor's fraudulent intent is not, nor is mere inadequacy of price, suffi-

cient to render the sale void. (*Jaeger* v. *Kelly*, 52 N. Y. 274.) Specific performance of a parol contract to convey real estate will only be decreed where the contract is clearly proved and is definite and certain in its terms ; and the acts of performance proved must be solely referable to the parol contract sought to be enforced. ( *Wiseman* v. *Lucksinger*, 84 N. Y. 31 ; *Cronkhite* v. *Cronkhite*, 94 id. 327 ; *Wheeler* v. *Reynolds*, 66 id. 231 ; *Shakespeare* v. *Markham*, 72 id. 403 ; *Erben* v. *Lorillard*, 19 id. 302, 304 ; *Hasher* v. *Reid*, 45 id. 420 ; *Day* v. *N. Y. C. R. R. Co.*, 51 id. 592.) A purchaser for value, innocent of fraud, is to be protected, notwithstanding his grantor was guilty of fraud, which as to him renders the transfer void. (*Griffin* v. *Murquardt*, 17 N. Y. 29 ; *Van Wyck* v. *Baker*, 16 Hun, 170 ; *Waterbury* v. *Sturdevant*, 18 Wend. 353 ; *Carpenter* v. *Muren*, 42 Barb. 300 ; *Laidlaw* v. *Gilmore*, 47 How. Pr. 68 ; Bump on Fraudulent Conveyance, 407, 598 ; *Spaulding* v. *Norman*, 51 N. Y. 672 ; *Boyd* v. *Dunlap*, 1 Johns. Ch. 478 ; *Bigelow* v. *Ayrault*, 46 Barb. 143 ; *Van Wyck* v. *Baker*, 16 Hun, 168–170.) The assignment vested in the assignee all estate, property, real and personal, legal or equitable, of the defendant Randolph. (3 R. S. [6th ed.] 18, § 32 ; 2 Edm. 22 ; *Bates* v. *Graham*, 11 N. Y. 237 ; *Everingham* v. *Vanderbilt* 12 Hun, 78 ; *Bolles* v. *Duff*, 10 Abb. [N. S.] 399 ; *First National Bank of Troy* v. *Cooper*, 47 How. Pr. ; *Webb* v. *Pell*, 3 Paige, 368–370 ; *Judd* v. *Seared*, 8 id. 548–553.) Jurisdiction is given in this class of actions in aid of the assignment, and the proceeds in case of recovery are to go into the hands of the assignee for general distribution. (*Dewey* v. *Moyer*, 72 N. Y. 70–78 ; *Sands* v. *Codwise*, 4 Johns. 536 ; *Bate* v. *Graham*, 11 N. Y. 237 ; *Goodwin* v. *Sharkey*, 5 Abb. [N. S.] 67.) A deed or conveyance not acknowledged or witnessed is void only as against purchasers and incumbrancers. It is perfectly good between the parties and all persons except those mentioned in the statute. (2 R. S. [6th ed.] 119, § 158.)

*A. M. Beardsley* for respondents. Since the findings of the

trial judge have been affirmed by the General Term, no questions of fact arising on conflicting evidence can be reviewed in this court, and the same must be taken as true. (Code of Civ. Pro., § 1337; *In re Ross*, 87 N. Y. 514.) Randolph had an equitable interest in the property, the value of which has been found by the court to be $750, and for this amount the plaintiffs have a lien on the property deeded. (*Bennett* v. *Abrams*, 41 Barb. 619; Story's Eq. Jur., § 330; *Hosford* v. *Merwin*, 5 Barb. 51, 58; *Williams* v. *Vandeveer*, 1 id. 509; *Lukins* v. *Aird*, 6 Wall. 78; Bump on Fraud. Conv. 564; *Ryan* v. *Dox*, 34 N. Y. 307; *Young* v. *Hermans*, 66 id. 382.) The conclusions of the trial court declaring the lien follow directly from the facts, and the directions as to the manner of its enforcement are strictly in accordance with equitable rules and principles. (*Van Wyck* v. *Baker*, 10 Hun, 39; 6 id. 168; *Dawley* v. *Brown*, 65 Barb. 107; *McCaffrey* v. *Hickey*, 66 id. 488; *Kennedy* v. *Barandon*, 57 id. 209; *Bergen* v. *Carman*, 79 N. Y. 153; Code of Civ. Pro., § 1877.) A party's declarations in his own behalf are to be received with suspicion, and only accepted after the most careful scrutiny. (*Hunter* v. *Westell*, 84 N. Y. 459; Code of Civ. Proc., § 838; Old Code, § 393.) The plaintiffs were entitled to prosecute the action for their own benefit, notwithstanding the fact that an assignment had been made by the debtor, and that the assignee was still in office. (2 R. S. 174, § 38; 3 R. S. [6th ed.], 190; re-enacted Code of Civ. Pro., § 1871; 2 T. & C. 614, 618; 71 N. Y. 319.) Prior to the passage of chapter 314 of the Laws of 1858, a voluntary assignee could not have maintained an action for the relief sought in this case. (*Storm* v. *Davenport*, 1 Sandf. Ch. 135, 137; *Brownell* v. *Curtiss*, 10 Paige, 218–219; *Mackey* v. *Cairns*, 5 Cow. 547, 585; *Browning* v. *Hart*, 6 Barb. 95; Potter's Dwarris, 184–187.) As the assignee failed to consider the sale fraudulent and to take active measures, the legal effect is the same as if he openly insisted that it was not fraudulent. Creditors are, in such cases, entitled to bring suits in their own behalf. (*Bates* v. *Graham*, 11 N. Y. 237, 242; *Ft. Stanwix Bk.* v. *Leggett*, 51 id. 554.) The insol-

vency of Randolph prior to and at the time of bringing suit gives judgment creditors the right to compel the application of the unpaid consideration in payment of their debts, although the grantee may have received the conveyance in good faith, and in ignorance of insolvency, or of the facts charging her with notice of the law. (Story's Eq. Jur., § 362 and note, and § 369; 1 Johns. Ch. 482; 4 Johns. 536; Hoffman's Ch. 419; 46 Barb. 143; 7 Lans. 345; 4 Hun, 642; 16 id. 168; 20 id. 492; 10 N. Y. 227; 65 id. 78; 16 Eng. Rep. [Moak's ed.] 666; Bump's Fraud. Conv. 564; 6 Wall. 312; Bigelow on Fraud, 136; 11 Paige, 495, 589; 16 Hun, 170; 2 Johns. Ch. 35; 12 Hun, 308; 12 Wend. 41; 20 How. [U. S.] 45; 8 Wall. 362; 23 How. 477; 52 N. Y. 362; *Davis* v. *Leopold,* 13 Weekly Dig. 337.)

DANFORTH, J. The plaintiffs, as judgment and execution creditors of one Randolph, sought by this action to have certain premises now owned by Laura Frothingham charged with the payment of their debt, upon the grounds, first, that they were conveyed to her by Randolph with intent to hinder and delay them in its collection; second, that notwithstanding the conveyance the debtor had still a valuable interest in the property. The first is not sustained either by the finding of the trial judge or the evidence, but judgment has been rendered in favor of the plaintiffs upon the other ground. We think it cannot stand against the defendants' exceptions.

The trial judge found, in substance, that on the 18th of February, 1879, and prior thereto, Randolph was the owner of the real estate in question, and between that day and August 2, 1879, on the procurement of the defendant, Arthur Frothingham conveyed the premises to Laura, his wife, by deed, reciting a consideration of $2,300, which was paid by Arthur. He also finds that at the time of the execution and delivery of the deed, and as further consideration therefor, it was agreed between Randolph and Arthur that Randolph should have the use and occupation of the cellar and first floor of the new building to be thereafter erected on the premises by Arthur,

for the term of three years without the payment of rent; that the fair rental value of that portion of the premises was seven hundred and fifty dollars for the three years; that no part of this sum has been paid, and the learned judge declared that the plaintiffs were entitled to a lien therefor upon the premises described in the complaint, to be enforced through sale thereof by a receiver.

We are unable to find in the record any evidence to warrant the finding upon which this conclusion rests. The testimony given by the plaintiffs, with a single exception, consists of admissions said to have been made by Randolph after the execution and delivery of the deed and in the absence of Frothingham. The learned counsel for the respondents disclaims any advantage from that class of testimony, except as against Randolph, and insists that it was not in fact received by the trial judge as against the other defendants. The only testimony to which he calls our attention, or which an examination of the case discloses in any degree bearing upon the defendant Frothingham, is that of witness S., who speaks of a conversation in, he thinks, March or April, 1879, in regard to the sale of the property, when Frothingham "said he had bought it," and exhibited to witness "a map or picture of the building he was going to place on the premises" * * *. He adds: "I asked how much he had given for them, and my recollection is, although I may be very easily mistaken, that he said $2,000, but it might have been what the deed says, and I made the remark, I would have given more, and turned to Randolph and said, 'I offered you more for the property once,' and Randolph replied, 'I don't remember,' and Frothingham spoke and said Randolph is to have the use for 'either' several years, or two or three years, and I can't say which as it is now out of my memory." Frothingham also stated that the building he should erect would cost $8,000 or $10,000, and the finding of the court is that it was, in fact, a three-story building, erected at an expense of upwards of $5,000 in the spring of 1879, and that no part of it came from Randolph directly or indirectly.

In weighing this evidence we are not permitted to consider its flat contradiction by Frothingham and Randolph, for that conflict only raised a question for the trial court ; but the witness himself states his inability to give the exact language used, or even its substance. Thus, the evidence is not only vague and uncertain, but the witness concedes that he has not the ability to deliver the admissions which he heard. If the declarations of a party can, under any circumstances, be received to raise a trust or create an interest in lands in another, they must be clear and explicit, and point out with certainty the subject-matter and the extent of the beneficial interest. We have here only indefinite expressions of an intention not carried into effect, and no words indicating the premises to be enjoyed or the time of use. There is no agreement proven. But if, as the plaintiffs contend, Frothingham came under an obligation to give the use of any portion of the premises, it was by the same assumption to be for a period exceeding one year, and, as the trial court has found, for a period of three years. In other words, it was a lease for more than one year by parol. It is plain that this is void by the statute of frauds. (2 R. S. 135, § 6.) · Nor does the evidence disclose either fraud which prevented its execution, or such a contract as equity would decree performance of, yet such relief, if any, upon the facts found by the court, is ·that to which the plaintiff would be entitled. Such is his claim. But equity cannot, under any circumstances, compel the performance of an agreement vague in its terms and standing upon testimony, of the accuracy of which the witness is himself uncertain.

There is another difficulty in the plaintiffs' way. After execution of the deed to Mrs. Frothingham, and before the recovery of the plaintiffs' judgments, Randolph made a general assignment of his property, real and personal, to one M. for the benefit of all his creditors. If he was then entitled to a lease of any portion of the premises, or to any benefit in them, the right necessarily passed to his assignee, to be disposed of for the benefit of all creditors interested in the assignment. (*Emigrant Industrial Savings Bank* v. *Roche*, 93 N. Y. 374.)

The fact of assignment is alleged in the pleadings of each party, and is found by the trial judge. He also finds in conformity with the plaintiffs' allegation that the assignee accepted the trust, duly qualified as assignee, and entered upon the performance of his duty as such, and is still assignee, and that the debts of the assignor greatly exceeded his assets. Upon these facts I am unable to see that any right or interest remained in the debtor, or that the judgment creditor had any claim which he could enforce against any interest which the debtor might have acquired from Frothingham. (*Spring* v. *Short*, 90 N. Y. 538.) This difficulty seems to have occurred to the pleader, for the complaint alleges that before the commencement of the action, the assignee, although informed of the facts and circumstances above referred to, declined to take any proceedings in his own behalf, and disclaimed all right and interest in any money, property or rights which might be recovered or obtained by any action for that purpose.

The assignee was made a party defendant, but does not appear to have answered. These allegations were, however, put in issue by the answer of the other defendants, and in regard to them there is no finding or evidence; whatever might otherwise be their effect, they cannot, as the evidence and proceedings stand, avail the plaintiffs in any way. Upon another trial the case may be changed, but even then a judgment like that before us could not be rendered. If such an assignee refuses in a proper case to proceed and get in the assigned property, the creditors collectively, or one in behalf of all who may come in and join, may compel the execution of the trust in equity. So he could be removed and a more efficient trustee appointed, but in either case a decree for a single debt would be erroneous. Nor is it possible for an assignee by any word or act of disclaimer, to relieve himself from the obligation to collect the estate and distribute it according to the terms of the assignment. He is bound to all the creditors, and their rights cannot be varied at his option. If otherwise, a preference might be created when the assignment was silent, and by refusing to sue or enforce a right of

property, as the respondents allege was done in the case before us, an assignee could permit a favored creditor to absorb the property of the estate and gain priority over others. No doubt the creditor might also sue if the assignee improperly refused to do so. But if successful, the decree must follow the assignment, and the fruits of the recovery be distributed according to its terms. (*Bate* v. *Graham*, 11 N. Y. 237; *Everingham* v. *Vanderbilt*, 12 Hun, 75; *Dewey* v. *Moyer*, 72 N. Y. 70; *Spring* v. *Short*, *supra*.)

The case of *Fort Stanwix Bank* v. *Leggett* (51 N. Y. 554), cited by the respondents, does not aid the plaintiffs. In that case the assignee was not a party, and no objection was made by answer or on the trial, nor did it appear that there were other creditors having an interest in the fund. Here there is an existing assignment, an acting assignee and creditors other than the plaintiffs.

As the record now stands we find nothing in it which entitles the plaintiffs to be assisted in equity. It may, however, be different upon another trial, and that it may be had, the judgment appealed from should be reversed.

Judgment reversed and new trial ordered, costs to abide the event.

All concur.

Judgment reversed.