ELMER T. HARVEY, WHO SUES AS WELL FOR HIMSELF AS FOR ALL OTHER CREDITORS OF JOHN McDONNELL, DECEASED, APPELLANT, *v.* LUCY McDONNELL, INDIVIDUALLY AND AS ADMINISTRATRIX, AND JOHN McCLUMPHA, JR., AS ADMINISTRATOR OF JOHN McDONNELL, DECEASED, RESPONDENTS.

*Fraudulent conveyance — the refusal of the administrators of the grantor to bring an action to set it aside does not authorize a general creditor to bring such an action — nor can the latter bring an action to recover money received by the administrators for which they must account in the Surrogate's Court — an administrator cannot enforce the trust created by section* 52 *of* 1 *Revised Statutes,* 728.

This action was brought by a simple contract creditor of John McDonnell, deceased, against his administrators, for the purpose of having declared fraudulent, as against his creditors, a certain conveyance of real estate, made by McDonnell in his lifetime to one O'Brien, and a conveyance of the same made by O'Brien to the defendant Lucy McDonnell, who was made a party defendant, individually and as administratrix.   The complaint alleged that the deeds were not delivered during McDonnell's life, or, if so delivered, that they were fraudulent, as intended to defraud his creditors, and, also, that all the other property of the said McDonnell had been applied by the administrators to the payment of his debts, and that the administrators, on request, refused to bring this action, and asked that the sums recovered be distributed among all creditors willing to come in and contribute to the expenses of the action.

*Held,* that if the deeds were not delivered in McDonnell's lifetime it would seem to follow that they never took effect, and that the land descended according to law, and that the plaintiff should reach it as he would reach any land of a deceased person.

That if the deeds were delivered with an intent to defraud creditors, then the: creditor must first exhaust his legal remedies by judgment and execution, or at least must have acquired, by judgment or execution, a lien on the property said to have been fraudulently assigned. (LANDON, J., dissenting.)

The plaintiff also sought to recover from the defendant Lucy McDonnell certain life insurance premiums paid by said McDonnell in his lifetime on policies upon his life, payable to Lucy at his death, as equitably belonging to his estate.

*Held*, that as this money must have been paid to Lucy after the death of the intestate, the question as to whether the money belonged to her individually, or to her as administratrix, could and should be determined upon her accounting in the Surrogate's Court.

The plaintiff also asked for similar relief as to land allegea to have been purchased by McDonnell in his lifetime, the title of which was taken in the name of the said Lucy.

*Held*, that the plaintiff could not maintain the action for two reasons:

*First.* Because the administrators could not enforce the statutory trust created by section 52 of 1 Revised Statutes, 728, in favor of the creditors of the person. paying the consideration.

*Underwood* v. *Sutcliffe* (77 N. Y., 58); *Ocean Bank* v. *Olcott* (46 id., 12) followed.

*Second.* Because the plaintiff had not exhausted his legal remedies.

*Estes* v. *Wilcox* (67 N. Y., 264) followed. (LANDON, J., dissenting.)

APPEAL by the plaintiff from a judgment dismissing his complaint, entered upon the trial of the action at the Montgomery Special Term by the court without a jury.

This action was brought by a simple contract creditor of John McDonnell, deceased, against his administrators for the purpose of having declared fraudulent as against creditors, a certain conveyance of real estate made by McDonnell in his lifetime to one O'Brien and a conveyance of the same made by O'Brien to the defendant Lucy McDonnell; also to recover from said Lucy McDonnell certain life insurance premiums paid by said McDonnell in his lifetime on policies. of insurance upon his life, payable to said Lucy at his death, as also equitably belonging to his estate. The complaint avers that the deeds. were not delivered during McDonnell's life, or if so delivered, that they were fraudulent as intended to defraud creditors. The complaint avers that all the other property of said McDonnell has been applied by the defendants to the payment of his debts, and that the administrators on request refused to bring this action.

The complaint also asks similar relief in regard to land alleged to have been purchased by McDonnell in his lifetime, of which the. title was taken in the name of said Lucy. And it asks that the.

sums recovered be distributed among all creditors willing to come in and contribute towards the expenses of this action.. The complaint was dismissed at the trial upon the ground that such an action could not be maintained by a simple contract creditor.

*E. F. Bullard,* for the appellant.

*N. C. Moak,* for the respondents.

LEARNED, P. J.:

The appellant admits that, if McDonnell were still living, an action could not be maintained except by a judgment-creditor. But he urges that, both before and since the statute of 1858, chapter 314, the administrators might have brought this action; hence that on their refusal so to do he, as one of the *cestuis que trust,* may bring it, making the administrators parties.

We do not think it important to examine the rights of administrators in this respect prior to the act of 1858. And we may notice, in passing, that that act speaks of "estate or property so held in trust," and again of "property held by or of right belonging to any such trustee." Whether an administrator in any such sense holds the real estate of the deceased that he can disaffirm conveyances thereof under this act we need not inquire at this time. It seems to be assumed in *Lichtenberg* v. *Herdtfelder* (103 N. Y., 302) that the administrators may disaffirm conveyances of real estate.

In regard to the real estate conveyed by Morris to Lucy, and for which the consideration was paid by McDonnell, the plaintiff relies on section 52 (1 R. S. 728) creating a trust in such property for creditors. But it has been decided that a receiver in supplementary proceedings cannot enforce that trust. (*Underwood* v. *Sutcliffe,* 77 N. Y., 58.) The opinion refers to the statute of 1858, and while it admits that a receiver may set aside fraudulent transfers, it holds that he cannot enforce this statutory trust. By analogy an administrator cannot. The creditor must enforce it directly by an action. (*Garfield* v. *Hatmaker,* 15 N. Y., 475.) But only after exhausting his legal remedies. (*Ocean Bank* v. *Olcott,* 46 N. Y., 12.) Therefore, in respect to this part of the complaint, it is plain that the plaintiff cannot maintain the action; both because the administrators could not have enforced the statutory trust created by section 52 (*ut supra*), as it is not derived

through the debtor; and also because the plaintiff has not exhausted his legal remedies, as was decided in *Estes* v. *Wilcox* (67 N. Y., 264).

Another claim of the complaint is that Lucy McDonnell, one of the defendants, has received from life policies, payable at the death of her husband, more than she might lawfully. (Laws 1870, chap. 277.) Now this money must have been paid after the death of the intestate. We do not see why any liability to account for such money could not have been heard by the surrogate, in the accounting of the administrators. (Code, § 2739; *Shakespeare* v. *Markham*, 72 N. Y., 400; *Boughton* v. *Flint*, 74 id., 476.) That accounting seems to be the proper place to determine the question as to the insurance money; whether it belongs to Lucy McDonnell, individually, or to her as administratrix.

Then as to the real estate of which McDonnell executed a deed to O'Brien and O'Brien to Lucy. According to one averment of the complaint these deeds were not delivered in McDonnell's lifetime. If so, it would seem to follow that they never took effect; and the land descended according to law. Then the plaintiff should reach it as he would reach any land of a deceased person. But that is not the course he has taken in this action. If, according to another allegation, the deeds were delivered, but with intent to defraud creditors, then it is a settled rule that the creditor must first exhaust his legal remedies by judgment and execution, or at least must have acquired by judgment or execution a lien on the property said to be fraudulently assigned. (*Adsit* v. *Butler*, 87 N. Y., 585; *Estes* v. *Wilcox, ut supra; Genesee River Bank* v. *Mead*, 18 Hun, 303; *Reubens* v. *Joel*, 13 N. Y., 488; *Gardner* v. *Lansing*, 28 Hun, 415; *National Tradesman Bank* v. *Wetmore*, 42 id., 359.)

In the case of *Bate* v. *Graham* (11 N. Y., 237), the plaintiff was a judgment-creditor. He sued to recover for the estate certain personal property fraudulently transferred by the deceased. Now before the statute (2 R. S., 449, § 17), it had been held that where a fraudulent vendee had taken possession of goods prior to the death of the vendor, and remained in possession, he might be charged as an executor *de son tort*, though there was a rightful executor. Hence it had been held that, after that statute, the executor might sue the fraudulent vendee for the goods thus taken. (*Babcock* v. *Booth*, 2 Hill, 181.) And the plaintiff's action was sustained. He

was, as above observed, not a simple contract creditor. (The case of *Dewey* v. *Moyer* (72 N. Y., 70); *Fort Stanwix Bank* v. *Leggett* (51 id., 554); *Crouse* v. *Frothingham* (97 id., 105), and *Sands* v. *Codwise* (4 Johns., 536), were also cases of judgment-creditors. The case of *Bates* v. *Bradley* (24 Hun, 84), was one of simple contract creditors. The debtors had filed a petition in bankruptcy. And therefore the creditors could not put their claims into judgment. (U. S. R. S., § 5106.) The case of *Overton* v. *Olean* (37 Hun, 48), was an action for an injunction to restrain the village from permitting a railroad company to erect a permanent structure in the street. Of course there could be no prior judgment. It was not a case of contract, but of tort. It is no exception, then, to the doctrine we have stated. It may be asked why should a judgment first be obtained? Because a court of equity is not a place in which to recover or to establish debts. The existence and the amount of the debt should be established in a court of law, and legal remedies to collect should be taken, before resort is had to equity to remove fraudulent obstructions. So it was said in *Estes* v. *Wilcox* (*ut supra*, at page 266), that the reason of the rule " does not fail by the death of the debtor before judgment recovered for the debt." The judgment " would conclude the creditor as to the amount of the debt."

The plaintiff's argument is that the administrators are trustees for the creditors, and that if the administrators will not act the creditors may. It is rather a new doctrine that an administrator is a trustee of the real estate of the deceased. Even over the real estate of which the deceased was seized at his death the administrator has no power. He can institute proceedings to subject it to the payment of debts. So can creditors. It seems somewhat strange that an administrator, who is not trustee of the real estate of which the deceased died seized, should be called trustee of that of which the deceased did not die seized. And a careful examination of the act of 1858 will show that the right of the administrator, as of other trustees, is limited to such property as is held by, or of right belonging to, such trustee or estate. So it was held in *Underwood* v. *Sutcliffe* (*ut supra*) that the statutory trust did not belong to a receiver and could not be enforced by him, although it might be enforced by a judgment-creditor. So in the present case, if there had been no conveyance of McDonnell to O'Brien and of O'Brien to Lucy,

would the land belong to the administrators? They could not even allow the claims of creditors as against heirs and devisees. (*In re Huxton*, 102 N. Y., 157.) If not, how can the execution of those deeds make the land belong to the administrator, or how can the setting aside the deeds as fraudulent give the administrators any title to the land which they would not have had if the deeds had never existed? It seems inconsistent to say that a trustee may disaffirm acts which, when disaffirmed, give him no more property or rights than he had before. It was, however, held in *Barton* v. *Hosner* (24 Hun, 467) that an administrator might bring an action to set aside a fraudulent conveyance of land. *Lichtenberg* v. *Herdtfelder* (*ut supra*) decides that, even if a judgment had been recovered, the action could not have been maintained. What was said as to actions by administrators was not necessary to the decision. It is not strictly necessary for us here to consider how relief is to be obtained in regard to land fraudulently transferred by the deceased. But we may remark that the statute makes such transfer void. (2 R. S., 137, § 1.) That a creditor recovering a judgment during the life of the debtor may, under execution, sell the land just as if no transfer had been made, and may then test the question of fraud by ejectment, or he may, after obtaining a lien, bring an action to set aside the fraudulent conveyance. If the conveyance, made with fraudulent intent, is void, then it would seem that, at least as to creditors, the land, at the death of the debtor, must be treated as going to his heir or legatee, and that the creditor, treating the conveyance as void as to him, must reach the land as he would any other land which had belonged to the deceased at his death. (Sec. 2749 *et seq.*, or section 1843 *et seq.*, of the Code of Civil Procedure.) Section 2762 in the former proceeding seems to provide opportunity for litigation with the fraudulent grantee over the alleged fraud prior to any sale. In the other proceeding a *lis pendens* can be filed (§ 1853) which probably would be a sufficient ground for an action against the fraudulent grantee, should the creditor prefer not to wait till he aquires a title under the sale by virtue of his judgment. But this is a matter we do not decide.

The judgment should be affirmed, with costs.

INGALLS, J., concurred.

LANDON, J. (dissenting):

The complaint alleges that the plaintiff was a general creditor of John McDonnell, who died intestate, and of whose estate the defendants are administrators; that a portion of plaintiff's debt has been paid by the administrators in part from the personal property and in part from the sale under the order of the surrogate of the real estate of the intestate; that the intestate in his lifetime transferred to the defendant Lucy McDonnell, certain property in fraud of his creditors, and that all of his assets have now been applied towards the payment of his debts, except the property thus fraudulently transferred to the defendant, Lucy McDonnell; that she claims to own such property and refuses, though requested to apply the same, to pay the balance of the debt due the plaintiff; that the plaintiff has requested defendants to bring an action to set aside such conveyances, which they decline to do; that the only property applicable to plaintiff's debt is that thus transferred by the intestate to the defendant, Lucy McDonnell; the complaint does not allege that plaintiff recovered any judgment against the intestate or the administrators. The prayer for relief is the usual one in a creditor's bill, except that the amount realized be distributed among all the creditors who come in, etc.

Upon the trial the plaintiff offered to prove the facts set forth in his complaint, and to prove the decree of the Surrogate's Court directing the sale of the intestate's real estate, not including that described in the complaint, to pay his debts; the sale; the application of the proceeds and the balance unpaid upon the plaintiff's claim, and that a large amount of other debts of the intestate were not fully paid.

The court, upon the objection of defendant's counsel to the evidence as insufficient to establish a cause of action against the defendants, and upon their motion that the complaint and facts offered to be proved did not constitute a cause of action against them, dismissed the complaint; the court holding that the plaintiff, as a general creditor without judgment and execution, could not maintain the action. We think the court erred in supposing that the principles applicable to creditors' bills or actions in the nature of creditors' bills governed this case. The single question presented is, whether a general creditor of an intestate, all of whose

property has in the due course of administration been applied to the payment of his debts, except the property which it is charged that he transferred to defraud his creditors, can, under chapter 314 of the Laws of 1858, upon the refusal of the administrators to bring the action in behalf of the creditors of the intestate to set aside such fraudulent transfer, himself bring the action in behalf of himself and the other creditors, joining the administrators as parties defendant. We think he can. The statute cited confers the right upon the administrator to bring the action "for the benefit of creditors." The authorities are conclusive that this means creditors at large, not merely judgment and execution creditors. (*Southard* v. *Benner*, 72 N. Y., 424; *Potts* v. *Hart*, 99 id., 168.)

The right to bring the action is not merely given by the statute, but the duty is enjoined. (*Lichtenberg* v. *Herdtfelder*, 103 N. Y., 302.) The administrator is the trustee of the creditors for the purpose of enforcing such rights and remedies in their favor as may be needful to protect them. (*Bate* v. *Graham*, 11 N. Y., 237.) If the administrator, as such trustee, refuses to do this duty upon request of the creditor, the latter may bring the action, making the trustee a party. (Id.; *Bates* v. *Bradley*, 24 Hun, 84; *Overton* v. *Village of Olean*, 37 id., 48; *Sands* v. *Codwise*, 4 Johns., 536, 601; *Crouse* v. *Frothingham*, 97 N. Y., 114; *Fort Stanwix Bank* v. *Leggett*, 51 id., 554; *Dewey* v. *Moyer*, 72 id., 70, 78.)

The relation of trustee and *cestui que trust* existing between the administrator and the creditors, equity has plenary jurisdiction to enforce the proper performance of the trust. (*Bate* v. *Graham*, *supra*.) It seems incongruous to insist that the general creditor must, before he can resort to such a remedy, obtain judgment and proceed to execution thereon, when the statute which gives this remedy gives it in favor of creditors at large. It is further incongruous for the reason that the remedy is given in favor of all creditors alike, not in favor of the vigilant or the execution creditor. (*Lichtenberg* v. *Hertdfelder*, *supra*.) If the argument in defense of the necessity of becoming a judgment creditor is valid, it is valid only as to form, for if one creditor obtains his judgment and proceeds to execution, he can pursue this remedy in behalf of himself and of other creditors who remain creditors at large. It is obvious that since the general creditor would be entitled to share in whatever

assets the administrator might realize by such an action, his claim or right to promote the action cannot be enhanced or improved by exhausting his legal remedies in other directions.

The statute gives this remedy in favor of the general creditor; he, therefore, need not cease to be such before he can resort to it. It is a manifest mistake to suppose that the mere incident of some of the actions under this statute is a condition precedent to all of them. *Lichtenberg* v. *Herdtfelder* is cited in opposition. But that action failed because the plaintiff brought it for himself alone, and did not make the administrators parties. The case recognizes the principles upon which this action is based. The court, however, in the discussion of a question not before it, remark that the surrogate has ample power, under section 2481 of the Code of Civil Procedure, to compel the administrators to bring such an action. No doubt that is true, but the power given by the Code to direct the action of admistrators in this respect is not exclusive of that general jurisdiction of trusts which the Constitution confers upon the Supreme Court.

The judgment should be reversed, new trial granted, costs to abide the event.

Judgment affirmed, with costs.