PASSAVANT *et al. v.* CANTOR *et al.*

(*Supreme Court, General Term, First Department.* December 31, 1891.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—VALIDITY—DECLARATIONS OF ASSIGNOR.
   Declarations of an assignor for benefit of creditors, made prior to the assignment, are admissible in evidence against him to establish the fraudulent character of the assignment. Per VAN BRUNT, P. J.

2. SAME—FRAUDULENTLY WITHHOLDING PROPERTY.
   Defendant, nine days prior to making an assignment for the benefit of creditors, purchased stock of a corporation to the amount of nearly $7,000, which he did not turn over to his assignee. In an action to set aside the assignment as fraudulent, he testified that the stock was purchased for his wife, since deceased, with her earnings, drawn by her from savings banks and given to him at different times, two or three months prior to the purchase, and deposited in his bank by his son. Defendant's books were missing, and he was unable to remember what amounts he received, or at what specific times, or to identify from a transcript of his bank-account any deposits with the sums received from his wife. It was shown that defendant had testified in supplementary proceedings prior to the action that all deposits made by him, or transfers of property, for two or three months previous to the assignment, with certain exceptions, were in the course of business, but had made no mention of the transactions with his wife. *Held,* that these facts warranted a finding of a fraudulent withdrawal of property by the assignor in contemplation of the assignment.

Appeal from special term, New York county.

Action by Herman Passavant and others against Herman Cantor and another to set aside an assignment for the benefit of creditors. Judgment for plaintiff. Defendants appeal. Affirmed. See prior report, 1 N. Y. Supp. 574.

Argued before VAN BRUNT, P. J., and BARRETT, J.

*Blumenstiel & Hirsch,* for appellants. *Carter, Hughes & Cravath,* (*George M. Pinney, Jr.,* of counsel,) for respondents.

VAN BRUNT, P. J. This action was brought by the plaintiffs, judgment creditors of the defendant Isaac Sickle, to set aside an assignment made by him to the defendant Cantor as having been made with intent to hinder, delay, and defraud the creditors of the assignor. The facts found were to the effect that in contemplation of the execution of the instrument the defendant Sickle had disposed of large amounts of property with the intent to hinder, delay, and defraud creditors; and thereupon the court found that said instrument was made with a fraudulent intent. The assignment in question was executed the 16th of November, 1887; and during the progress of the trial the court allowed statements made by the defendant Sickle to various persons as to the amount of his assets and liabilities existing in January, June, and July, 1887, to be introduced in evidence. To this the defendant objected, and exception was taken; the ground of the objection being that the declarations of the assignor, whether made prior or subsequent to the assignment, are inadmissible to affect its validity, unless they are part of the *res gestæ.* And our attention is called to the case of *Flannery* v. *Van Tassel,* (N. Y. App.) 27 N. E. Rep. 393; *Truax* v. *Slater,* 86 N. Y. 630; *Loos* v. *Wilkinson,* 110 N. Y. 210, 211, 18 N. E. Rep. 99, and other cases,—to establish the proposition that the mere declarations of the assignor of a thing in action, forming no part of the *res gestæ,* are incompetent to prejudice the title of his assignee, whether the assignee be one for value, or merely a trustee for creditors, and whether such declarations be antecedent or subsequent to the assignment.

If this proposition correctly stated the law, then undoubtedly error was committed in the admission of the testimony in question. But we think that, upon an examination of the question, it will be seen that it contains an erroneous element, so far as it applies to an assignment made to a trustee for the benefit of creditors. It is undoubtedly true, so far as it relates to an assignee for value, because no fraud upon the part of the assignor can invalidate the

assignee's title unless the assignee has participated in some way, or has knowledge of such fraud. But the rule is entirely different in the case of assignments for the benefit of creditors. There the fraudulent intent of the assignor alone is sufficient to invalidate the assignment. His good faith in the making of the instrument is the primary subject of the investigation, and anything which tends to establish by legal evidence the charge of fraud as against him is admissible, because such fraud will invalidate the assignment, although the assignee may not have participated in it. Heretofore, in case of an investigation of the question as to the fraud of an assignor where an assignment has been made for the benefit of creditors, the declarations of the assignor seem to be necessarily admissible as against him, and, if they establish fraud, form the foundation of a judgment to set aside the assignment. This principle is recognized in the case of *Wright* v. *Nostrand*, 94 N. Y. 31, where it was held that it was not error to admit in evidence testimony taken on supplementary proceedings of a grantor in an action to set aside his conveyance as fraudulent. The same principle is recognized in the case of *Loos* v. *Wilkinson, supra*, where the plaintiff was permitted, in an action to set aside the conveyance of property as a fraud upon the creditors, against the objection of the defendant, to prove the declarations of the grantors, while they were in possession of the property, to the effect that they owned the property covered by the deed. And in the case of *Bush* v. *Roberts*, 111 N. Y. 278, 18 N. E. Rep. 732, the distinction between purchasers for a valuable consideration and those who are not, in reference to the effect of declarations of the grantor, is recognized, where the inadmissibility of the declarations of the grantor is based upon the fact that the grantee was a purchaser for a valuable consideration. As already intimated, where the conveyance rests upon a valuable consideration, both the grantor and grantee must be affected by the fraud. The fraud of the grantor alone is not sufficient to impair the grantee's title. But in the case of a conveyance without consideration for the benefit of creditors a different rule obtains, in that the fraud of the grantor alone is sufficient to avoid the act. Therefore, any evidence which would have been admissible as against the assignor if he had been the sole party to the action would be proper in this action upon the question of his good faith. But we think, however, that the declarations of the assignor in reference to the amount of his assets formed no basis for the conclusion that there had been any secretion of property. They rather tended to show that he had been making false statements in regard to his condition in order to prop up his failing credit. His declarations in regard to his liabilities tended, however, to show that suspicion might be cast upon the good faith of the claims which the assignor subsequently provided for in contemplation of his assignment.

It is not necessary to consider all the points which have been raised in respect to the claims which are attacked, and which were paid or received by the assignor prior to the assignment, in detail. It is sufficient to refer to but one, and that is the transaction in respect to the Pacific Mail stock alleged by the defendant to have been purchased by him from money received from his wife for her. The evidence showed that on October 23, 1887, the assignor, Sickle, ordered certain stock-brokers to purchase for him 200 shares of Pacific Mail; that on the same day he deposited with them a certified check for $5,000, drawn upon his own account in the National Park Bank, and on the 3d of November, 1887, deposited a like check for $2,000; and on the 7th of November he received from said stock-brokers 200 shares of Pacific Mail stock, and also $189.55, being the difference between the purchase price of the stock and the $7,000 deposited, and signed a receipt for the stock in his own name. This purchase was completed about nine days prior to the assignment, and no part of said stock was turned over to the assignee. The assignor explains this transaction by stating that this stock belonged to his wife; that these moneys were his wife's earnings, accumulated in a period of 25

years in making army officers' clothing, and keeping boarders for 12 years; that his wife gave him the money for the purchase at different times; that she handed him some money in October, 1887, which she drew out of the savings bank,—partly in October, may be a little before that, may be in September, part of it; that he thought that in the latter part of October he got the bulk of the money, in three or four different installments handed by his wife at different times,—it may been five; that he did not get all the money in October; that it had been given at different times by his wife, as she found it convenient, but he did not remember amounts. Subsequently, he stated that it may have been that the first was given in September; that was his best recollection; that he could not be sure about dates, but he knew that the money was given to him two or three months previous to his assignment, and that the money was deposited in the Park Bank. Thereupon, the books of the defendant being missing, the plaintiff offered in evidence a copy of the account of the assignor with the Park Bank from January, 1855, down to December, 1886, on the debit side, and on the credit side to the 3d October, 1887; and he was asked to look at the statement of deposits as they appeared in the transcript of his bank-account, and point out the deposits which were made of the moneys received from his wife. He replied that would be a hard matter for him to do, because he had been away a great deal from his store, and his son had attended principally to the bank business; that he did not bother about that. Being further interrogated, he said his wife drew the money from savings banks; that he did not remember the banks; that his youngest son drew the money, and he got it from his wife; and that the money was given to the witness by his eldest son to deposit; and that he could not point out these amounts in the transcript of the bank-account. For the purpose of discrediting this story the plaintiffs offered in evidence testimony which the assignor gave in supplementary proceedings before the beginning of this action, in which he was asked these questions: "*Question.* Do you remember how much money you took in in October? The moneys that you deposited in the Park Bank were received from your business, were they not? *Answer.* Yes, sir. *Q.* All of them? *A.* Yes, sir." And the witness, having testified to certain transactions with his sister and his brother-in-law, was asked: "Independent of that, the moneys you received and the moneys which you paid were in the course of business transactions? *A.* They were." And again he testified that the cash transactions which he had with borrowed money, or money paid to him, between June, 1887, and the time of his failure, were the two which he mentioned, and which he paid back some time before his failure, and that no moneys were left with him other than those which he had stated, (no reference whatever being made to this transaction with his wife.) And in another place he states that he did not recall any other cash transactions, any money deposited with him, or any cash loaned to him, other than those he mentioned the day before, and that, with the exception of the transfers he had mentioned, (the one of his wife not being among the number,) he had made no other transfers of any other property outside of his sales to any person during the two months before his failure. He was also asked: "Did any person have any money on deposit with you to use in the business? *Answer.* No, sir. Well, you may modify that. There was $1,000 of money, which I owed to a party, which was used in the business. *Q.* Who was that? *A.* My sister. *Q.* What was her name? *A.* King. I owed her $1,000. *Q.* Did any one else have any sums on deposit with you? *A.* None that I remember. *Q.* Did any one else place moneys in your hands during the year 1887? *A.* Not that I remember. *Q.* No large amounts? *A.* No, sir." At the time of the trial of this action the wife of the assignor was dead.

It seems to us that but one conclusion can be arrived at from the testimony offered by the defendant in respect to this transaction. It was certainly within

the reach of the defendant, in case his wife had drawn this money from savings banks to give to him for the purchase of the stock, to have established that fact. If he had received the large amount of money which he says he did in September and October, 1887, he certainly would have recollected it at the time of his supplementary examination; and there would be some ear-marks in the account of the defendant with the Park Bank by which the receipt of such large sums of money might have been traced. The fact of the apparent ignorance of the assignor of this whole transaction in respect to the purchase of this stock for his wife at the time of his supplemental examination not only cast suspicion upon his story of the receipt of this money from his wife, but threw the burden upon him, to some extent, to establish its good faith by evidence other than the improbable story to which he testifies. It is impossible to believe that the assignor upon the supplementary examination should have so completely ignored this transaction if he had not been actuated by the purpose to deceive and conceal the abstraction of this money from the bank and the purchase of the stock, which would not have been the case had he actually received the money from his wife and invested it as he now claims to have done. It seems to us that no other conclusion could have been drawn in respect to this transaction than the one arrived at by the court below, and that it was a fraudulent withdrawal of his property by the assignor in contemplation of this assignment. We think, therefore, that the judgment should be affirmed.

It is sought to charge the costs of the affirmance personally upon the assignee. There is no evidence in this case to justify any such action against the assignee. It was his duty to defend the assignment to the best of his ability, and it would appear that he had been successful sufficiently often to justify a continuance of such defense. The judgment should be affirmed, with costs.

BARRETT, J. I concur in the result, and, unreservedly, in all that the presiding justice says with regard to the shares of Pacific Mail stock. But I cannot agree to the proposition that the declarations of the assignor made prior to the execution of the assignment, and forming no part of the *res gestæ*, are admissible as against the assignee. They are undoubtedly admissible as against the assignor, and they are also admissible against the assignee when they form part of the *res gestæ*. Thus the declarations of the assignor with regard to the subject-matter of the transfer, made while he is in possession, and characterizing such possession, are admissible as part of the *res gestæ*. So, also, the declarations of the assignor made contemporaneously with the assignment, or in immediate contemplation thereof, and illustrating its fraudulent character, are admissible as part of the transaction. But the mere naked statements of the assignor, whether made before or after the assignment, not connected with the principal fact, cannot be permitted to destroy the trust title of the assignee. Any other doctrine would put it in the power of a debtor to make or unmake assignments at his pleasure. The assignee represents the creditors, and these beneficiaries should not be deprived of their vested rights by any loose talk of their debtor. If it be true, as matter of fact, that the assignor's design in making the assignment was fraudulent, the instrument cannot stand; and, so far as the assignor is concerned, his general confessions, whether made long prior or long subsequent to the assignment, are evidence of his guilty intent. But as to the assignee and the beneficiaries under the assignment, while the rule of law is the same, namely, that the assignor's guilty intent is alone sufficient to avoid the instrument, yet the rule of evidence is different, and such guilty intent must be proved as an independent fact by the acts and doings of the assignor, and not by admissions forming no part of the *res gestæ*. The presiding justice suggests that, because the declarations of the assignor are admissible against him, they

must, if they establish fraud, form the foundation of a judgment to set aside the assignment; and he thinks that this principle is recognized in *Wright* v. *Nostrand,* 94 N. Y. 31. I do not thus read this case. There the fraudulent grantor, Nostrand, was called as a witness for the grantee to support the conveyance, and the prior declarations were admitted to affect his credibility. This is apparent from the text of the opinion, which is as follows: "The defendant Nostrand had been called as a witness for the defendants on the trial, and had given material evidence for them. The deposition received in evidence was competent, not only for a limited purpose, as against him, as an admission in the case made by one of the defendants therein, but was also competent at the time it was offered, as against all of the defendants, for the purpose of affecting the credibility of the testimony given by such witness for them on the trial." Nor was the principle recognized in *Loos* v. *Wilkinson,* 110 N. Y. 195, 18 N. E. Rep. 99. There the bill was filed to set aside a deed of real estate executed by the debtors in May, 1884, and also a general assignment by the same persons executed in the following December. It was held that the fraudulent transfer, so made in May, might be considered in determining whether there was fraud in the subsequent assignment, and that declarations of the fraudulent grantors and assignors, made while they continued in possession of the estate and exercised acts of ownership over it,— that is, intermediate the deed and the assignment,—were admissible for the purpose of characterizing their possession. It was also held that as the deed was kept from the record, and concealed from the public, and as it was part of a fraudulent scheme concocted by the grantors and grantee to obtain credit, the declarations were admissible as a part of the means used to accomplish the fraud. EARL, J., placed the decision distinctly upon the ground that, under the circumstances of that case, the declarations were in the nature of *res gestæ.* In *Bush* v. *Roberts,* 111 N. Y. 284, 18 N. E. Rep. 732, which is also cited in support of the distinction between an assignee for value and an assignee in trust for creditors, the doctrine of *Truax* v. *Slater,* 86 N. Y. 632, was reaffirmed, and the following language of EARL, J., in the latter case, quoted with evident approval: "The mere declarations of an assignor of a chose in action, forming no part of any *res gestæ,* are not competent to prejudice the title of his assignee, whether the assignee be one for value or merely a trustee for creditors, and whether such declarations be antecedent or subsequent to the assignment." Clearly, there is no distinction in principle between the assignment of a chose in action and the assignor of a chattel, so far as the present question is concerned. The case of *Truax* v. *Slater* was also cited in support of the decision in *Flannery* v. *Van Tassel,* (N. Y. App.) 27 N. E. Rep. 393, where the declarations held to be inadmissible were in fact made upon the very date of the transfer. The assignee for the benefit of creditors is not to be treated as a holder of the assignor's estate by privity of representation or by legal devolution. The distinction contended for might properly be made in such cases. But when it is considered that, although not a *bona fide* purchaser in value, the assignee is at least a trustee for the assignor's creditors, and as their representative may himself attack fraudulent transfers made by his assignor, (*Spring* v. *Short,* 90 N. Y. 538; *Crouse* v. *Frothingham,* 97 N. Y. 113; *Loos* v. *Wilkinson, supra,*) his vested estate, and the creditors' vested rights therein, should clearly not be disturbed without legal evidence of the assignor's guilty intent.

The effect of denying to a trust assignee the position of a transferee for value is simply that he takes the estate subject to all existing equities. These equities may, under certain circumstances, be evidenced by the assignor's admissions; and his declarations may then be resorted to, to establish such equities. We must not, however, confuse this principle with that which governs when a direct attack is made upon the assignment itself. In the former case the assignee, seeking to reduce the estate to possession in the ordinary

way, stands directly in the shoes of the assignor. But he may also, under the act of 1858, c. 314, act in direct hostility to the assignor, and may seek to reduce the estate to possession by avoiding the assignor's fraudulent transfers. In assuming that attitude, he no longer stands in the shoes of his assignor. So, also, in defending his estate and the vested rights of his *cestuis que trustent* from attacks upon the assignment itself, he stands in no one's shoes but his own,—his own as trustee and as legal representative of the creditors. As against such trustee and legal representative of creditors, the guilty intent of the assignor should be proved as any other independent fact is proved; and the trust assignee should not be bound by declarations made in his absence, and forming no part of the *res gestæ.*

I think, however, that the assignee in the case at bar was not prejudiced by the admission of the assignor's declarations. These declarations were by no means vital to the conclusions finally reached. Much, at least, of what such declarations tended to establish, was proved by other and entirely competent evidence; and, further, there was abundant evidence without these declarations to sustain the judgment. Indeed, if any other conclusion had been arrived at with regard to the Pacific Mail stock,—leaving these admissions entirely out of the case,—I should unhesitatingly have voted for a reversal of the judgment upon the facts. I therefore concur in the affirmance of the judgment.