JOHN M. HELCK, as Administrator, etc., Appellant, *v.* HENRY REINHEIMER et al., Impleaded, etc., Respondents.

Where, in an action of foreclosure, defendants, claiming under a title paramount to the mortgage, set up their claim by answer and the same is litigated and decided in their favor, they may not take the ground on appeal that the judgment in their favor should be sustained on the ground that the question could not properly be litigated in the action. Both parties having consented to, and having actually litigated it in this form, are bound by the judgment.

A deed recited an ante-nuptial agreement between J., the grantor, and his wife, in pursuance of which the conveyance was executed, which agreement was to the effect that in case the intended marriage was celebrated he would convey the land in question to H., " to the use, benefit and behoof " of the wife " in manner following," in the event of the decease of J during the lifetime of the wife, she to have the use of one-half of the premises during her life, and after her death the same to revert to the heirs of J.; also the use of the other half during the minority of two children of J. by a former marriage; when they become of age the said half to be conveyed to them, and in case of the decease of the wife without issue during the lifetime of J. all of the property to be transferred back to him. The wife died before J. *Held,* that no trust estate and no estate whatever vested in the grantee named in the deed, but it was simply a conveyance to him for the uses of the beneficiaries named, which uses would be executed by the statute without any conveyance; that the deed was not to take effect at all, except in the contingency of J. dying before his wife; that the provision in the agreement that, in the event of the decease of the wife " without issue " during the lifetime of J. all of the property should be assigned back to him, was not of itself sufficient to create a trust in favor of the issue of the marriage; that, therefore, all interests under the deed were defeated by and it ceased to have any operation upon the death of the wife during the lifetime of J.; and that a mortgage, executed by J. and his wife upon the premises after the execution of the deed, was a valid lien.

(Argued March 22, 1887; decided April 26, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 4, 1886, the nature of which order, of the judg-

ment below and of the action, and the material facts, are set forth in the opinion.

*John F. Anderson* for appellant. The action was treated on the trial as one solely for the purpose of construing the instrument under which the defendants claimed the premises and its effect upon the mortgage, and having been tried in the court below upon the merits without any exceptions on the part of the defendants, it will be so considered on appeal. (*Brundage* v. *Domestic & F. Mis. Soc.*, 60 Barb. 213 ; *Barnard* v. *Onderdonk*, 98 N. Y. 158–163 ; *Keeler* v. *Keeler*, 102 id. 80 : *Jordan* v. *Van Epps*, 85 id. 436 ; *Hynes* v. *McDermott*, 82 id. 41–48 ; *Osgood* v. *Toole*, 60 id. 475 ; *Devyr* v. *Schaefer*, 55 id. 446 ; *Cole* v. *Malcomb*, 66 id. 363.) The deed is inoperative, and the trust ceased when Philipena died during the lifetime of Jacob Reinheimer. (R. S. [Bank's 7th ed.] 2183, § 67 ; *Quin* v. *Skinner*, 49 Barb. 128.) This is not one of the trusts authorized by that statute. It does not come under either of the subdivisions. (R. S. [Bank's 7th ed.] 2182, §§ 49, 55, 58 ; *Jarvis* v. *Babcock*, 5 Barb. 139 ; *Hotchkiss* v. *Elting*, 36 id. 38 ; *Verdin* v. *Slocum*, 71 N. Y. 345.) The purposes of the power having ceased to exist, the power had also ceased, and the premises reverted to the grantor without any conveyance. (*Quin* v. *Skinner*, 49 Barb. 128– 133 ; *Hawley* v. *James*, 5 Paige, 318–457 ; *Sharpstern* v. *Tillon*, 3 Cow. 660 ; *Hutchins* v. *Baldwin*, 7 Bosw. 241.)

*T. F. Bush* for respondents. The grant being to the " use and behoof of Philipena Winegarth," no estate, legal or equitable, vested in the trustee. (3 R. S. [7th ed.] 2180, §§ 47, 49.) The creation of contingent remainders, continuing both as to the person and estate limited, to vest in the future, limited upon a life estate, is authorized by the Revised Statutes. (3 R. S. [7th ed.] 2176, §§ 13, 26, 28, 30.) This construction of the *ante-nuptial* agreement, and the grant made in execution of it, is in strict accord with the rule in equity as to the construction of such agreements. (Story's Eq. Jur., §§ 983, 984, 991, 992.)

RAPALLO, J.   This was an action to foreclose a mortgage on real estate, executed in the year 1873 by Jacob Reinheimer and his wife Philipena, to the plaintiff's intestate, to secure the payment of money lent.   None of the defendants answered except Henry Reinheimer and Henry Reinheimer, Jr.   The execution of the mortgage and the amount due thereon were not disputed, but the two defendants who answered set up as a defense that, at the time of the execution of the mortgage, the mortgagor, Jacob Reinheimer, had no title to the mortgaged premises, and had acquired none since; that in 1864 he had conveyed said premises to the defendant Henry Reinheimer in trust for the benefit of said Philipena and the heirs of said Jacob, and that said Henry still owned them for the purposes of the trust, and they demanded as relief that the complaint be dismissed and that the premises be adjudged free from the lien of said mortgage.

The plaintiff then amended his complaint and alleged that the trust set up in the answer had terminated; that the deed was void, and demanded, in addition to the judgment of foreclosure, that the alleged trust deed be adjudged null and void.

The same answer was then made to the amended complaint, and the issues were tried before the court.

No question of fact was involved, but only the construction and effect of the deed from Jacob Reinheimer and wife to Henry Reinheimer, given in 1864, the defendants contending that it created a valid trust and that the mortgage created no lien, and the plaintiff insisting that the deed was of no effect.

Neither of the parties made any objection to the trial of this issue in the foreclosure suit.   If the objection had been raised that the defendants claimed under a title paramount to the mortgage, it would, according to some of the cases cited, have been the duty of the court to refuse to try that issue. It is not necessary to decide that question now; but if that course had been taken, the judgment rendered would have had no effect upon the rights of either party, so far as the question of the validity or effect of the trust deed is concerned.   But instead of taking the objection, both parties

submitted their rights, in that regard, to the adjudication of the court.

The court at Special Term decided that the deed of September, 1864, to Henry Reinheimer and the contract therein recited, were intended as a marriage settlement for the benefit of the children of the marriage between said Philipena Reinheimer, as well as for the said Philipena, and created a valid implied trust for the benefit of said children, and a power in trust in favor of said Henry, and that the mortgage to plaintiff's intestate conveyed no interest in the mortgaged premises, and accordingly rendered judgment dismissing the complaint with costs.

The General Term, on appeal from the judgment, decided that the question of the validity and effect of the trust deed should not have been tried in this action, the interests of those claiming under that deed not being subsequent to the mortgage, but being adverse to it, and the complaint should be dismissed with costs as to the two defendants who had answered, but without any decision on the merits, and that as to the other defendants the usual decree of foreclosure should be granted. Judgment was entered, in conformity with this decision, containing a provision that the judgment should not prejudice any parties who might be interested under the trust deed or involve its validity or effect.

We do not concur in the view taken by the court at General Term. If the defendants had claimed that they had been improperly made parties defendant, because their rights were paramount and not subsequent to the mortgage and could not properly be litigated in this action, it might, as before stated, have been proper to dismiss the complaint with costs, as to them, for that reason. But in this case instead of taking any such ground, they themselves, in their answer, set up their claims under the trust deed, and asked that they be adjudicated upon, and demanded judgment that the mortgaged premises be freed from the mortgage, and that it be discharged of record, and on the trial both parties litigated the question, and the defendants obtained judgment in their own favor thereon.

Under these circumstances we think that it was too late to take the ground that the dismissal of the complaint, as to them, should be sustained on the ground that the questions could not properly be litigated in this action.   Both parties having consented to litigate, and having actually litigated them in this form, we think they would both be bound by the judgment. (*Judson* v. *Van Epps*, 85 N. Y. 427, 435, 436; *Barnard* v. *Onderdonk*, 98 id. 158, 163.)

We must, therefore, consider the case as to the two defendants, who are respondents on this appeal, upon the merits. As to the other defendants, whose interests are alleged in the complaint to be subsequent and subject to the mortgage, and who have not answered, the judgment will not estop them as to any rights which they may have by title paramount to the mortgage.   But as to the two respondents, one of whom is the trustee named in the alleged trust deed, and the other one claiming to be a beneficiary thereunder, a valid judgment can be rendered determining the questions which they have voluntarily litigated in this action.

The deed of September, 1864, under which they claim, is, in substance to the following effect: It recites an ante-nuptial contract between Jacob Reinheimer, then the owner in fee of the mortgaged premises, bearing date the 13th of August, 1863, of the first part, Philipena Winegarth of the second part, and Henry Reinheimer, brother of said Jacob, of the third part; that a marriage is shortly to be solemnized between said Jacob and said Philipena, and therefore it is agreed as follows:

*First.* The said Jacob agrees that in case the intended marriage is solemnized he and said Philipena will, by a sufficient conveyance, settle and convey the land in question on and to said Henry, "*to the use, benefit and behoof of the said Philipena, in the manner following.*" That *in the event of the decease of the said Jacob Reinheimer during the lifetime of the said Philipena* she shall have *the use of the south half* of the property during her natural life, and after her decease the same shall *revert* to the heirs of said Jacob Reinheimer, and

*Second. The use of the other half* of said premises *during* the minority of Henry Reinheimer and Mary Reinheimer, two children of said Jacob by a former marriage, and when they become of age that they shall have the north half of said property conveyed to them, and in the event of the decease of the said Philipena without issue during the lifetime of the said Jacob all the property shall be transferred back to said Jacob.

*Third.* The said Jacob agrees to adopt Christ Anton Winegarth, son of his said intended wife, and place him in every respect on equal terms with whatever children may issue from the marriage, and in case there should be no such issue, that said Christ Anton shall be joint and co-heir with said Henry and Mary Reinheimer.

After this recital, the deed of September, 1864, proceeds to recite that the marriage has taken place, and in pursuance of the agreements and covenants contained in the ante-nuptial contract, conveys the land in question to Henry Reinheimer for the use and purpose therein mentioned. The legal effect of this deed was, in our judgment, to vest in Philipena, in case she should survive her husband, an estate for her own life in the south half of the land, leaving the remainder in fee in Jacob, and in the same contingency to vest in her an estate, during the minorities of Henry and Mary, in the north half of the premises, with remainder in fee to said Henry and Mary, to vest in them on the death of Jacob in the lifetime of Philipena, and to take effect in possession on their coming of age. That no trust estate and no estate whatever was vested in Henry, the grantee named in the deed, but it was a mere conveyance to him to the use of the respective beneficiaries named, which uses would be executed by the statute, without any conveyance, and that those provisions were not to take effect at all, except in the contingency of Jacob dying during the lifetime of Philipena. The intention clearly was to provide for Philipena in case she should survive Jacob, and she having died before him, the deed, on her death, ceased to operate, and the whole title remained in him. The purpose

of the ante-nuptial agreement and of the deed, seems to have been only to provide for the case of Jacob dying in the lifetime of his wife, leaving him to take care of and provide for his children in case he should survive her.

There is no provision in the agreement or in the deed for the issue of the marriage, in any event. An intention to provide for them is sought to be implied from the provision in the agreement that in the event of the decease of Philipena *without issue* during the lifetime of Jacob, all the property shall be assigned back to the said Jacob, but it is impossible to say that this provision is, of itself, sufficient to create any trust in their favor, for there is nothing in the deed providing that if Philipena should die before Jacob, leaving issue, such issue should derive any benefit from the property. The provision for the adoption of Christ Anton Winegrath gave him no greater rights than those of the children of Jacob, born either before or after the marriage. As their interests were subject to the contingency of Philipena surviving Jacob, they were defeated by her death during his lifetime. We think the mortgage given to plaintiff's intestate was a valid lien upon the mortgaged premises, and that the deed to Henry Reinheimer ceased, upon the death of Philipena, to have any operation, Jacob Reinheimer being then living.

The judgment of the General and Special Terms should be reversed and the usual judgment for the foreclosure of the mortgage and sale of the mortgaged premises should be rendered in favor of the plaintiff, with costs.

All concur. ·

Judgment accordingly.