## CONSAULUS *v.* McCONIHE *et al.*

(*Supreme Court, General Term, Third Department.* July 2, 1888.)

1. JUDGMENT—EFFECT—RES ADJUDICATA.

In an action to foreclose a mortgage upon a mill property, the issues involved were whether the machinery and fixtures were covered by the mortgage, and whether the real estate and improvements had not been partnership property subject to partnership debts of a firm formerly owning it, and therefore whether the mortgage in question, which was executed by a grantee of a purchaser at execution sale of one of such partner's interest in the real estate, was not subject to such partnership debts. The machinery, fixtures, and real estate were held subject to the mortgage. *Held,* that such issues could not be again litigated in a separate action in which a grantee of such mortgagor, who was a party to the former action, sought to assert his equity as a creditor of such firm, and thus limit the lien of the mortgage.

2. VENDOR AND VENDEE—SALE OF PROPERTY—MORTGAGE BY INDIVIDUAL PARTNER. ·

Where a creditor of an insolvent firm purchases real estate from an assignee for benefit of creditors of such firm, subject to a mortgage upon the individual interest of a member of the firm in the same, such purchaser stands in the same position as any other purchaser, and is not entitled to the sole benefit of equities due the creditors of such firm, as against such individual mortgage creditor.[1]

3. PARTNERSHIP—LIEN ON FIRM PROPERTY—MORTGAGE OF INDIVIDUAL INTEREST.

In an action by a creditor of a firm to establish a lien upon partnership property as against the holder of a mortgage upon the individual interest of a member of such firm it appeared that, upon dissolution of the firm, such creditor had accepted a new firm, then formal, as his debtor. It was not shown that he had not waived his claim against the members of such former firm, and it appeared that he had long delayed asserting such claim; that the mortgage had been transferred; and that new rights had intervened. *Held,* that the creditor was not entitled to such lien.[1]

4. SAME—JUDGMENT AGAINST SUCCEEDING FIRM.

When such creditor has recovered judgment on such demand against a successor of such new firm, he is precluded from asserting such partnership lien, as the two remedies are inconsistent.

Appeal from circuit court, Montgomery county

Action by John Consaulus against Isaac McConihe and others, who were holders of mortgages upon the real estate described in the complaint. The complaint alleged that the real estate and property were in equity the personal property of the late insolvent firm of McDonnell, Kline & Co. at the death of John McDonnell, one of the members of the firm, and also at the time the mortgage was given, and therefore was only upon the surplus after payment of the firm debts; that, as the firm was insolvent, there was no surplus, and therefore the mortgage attached upon nothing, and the surplus, after payment of admitted prior mortgages, should be paid to the plaintiff as the owner of the equity of redemption under purchase from the assignees of the insolvent successor firm which had assumed the payment of the debts of the prior firm. The facts are sufficiently stated in the opinion. Plaintiff appeals from so much

---

[1] As to the priorities between firm and private creditors in making disposition of the assets of an insolvent firm, see Johnston's Appeal, (Pa.) 9 Atl. Rep. 76, and note; Machine Co. v. Bannon, (Tenn.) 4 S. W Rep. 831, and note; Succession of Pilcher, (La.) 1 South. Rep. 929, and note; Powers v. Powers, (Wis.) 35 N. W. Rep. 53. A judgment for a firm debt has no priority over a judgment previously obtained against the several members of the firm on their individual liabilities, as against firm property. Davis v. Canal Co., (N. Y.) 15 N. E. Rep. 873.

of the judgment as denies the prayer of the complaint to adjudge that a certain mortgage upon an undivided third of certain real estate attaches as a lien only to the land, and not at all to the buildings and improvements made upon the land. The action was tried at the Montgomery circuit, before the court without a jury.

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*E. F. Bullard*, for appellant. *Orin Gambell*, for respondents.

LANDON, J. When John McDonnell died, February 5, 1878, he was, and since 1863 had been, a member of the partnership firm of McDonnell, Kline & Co., consisting of McDonnell, Perry Kline, and Thomas Harvey, manufacturers of knit goods. His death dissolved that firm. The firm had a large manufacturing establishment, built upon real estate which had been purchased in parcels from time to time, the title to which stood in the individual names of the several members of the firm as tenants in common, except a small strip used for a right of way, the deed for which was taken in the name of the firm. The erections upon the real estate and the machinery were made and obtained by the firm by means of the firm funds and credit. If this action were in behalf of the creditors of the firm, or of its surviving members, to enforce their demands against it, or claims to contribution, it might be important to ascertain whether the entire property should not be regarded as partnership property, if necessary so to treat it, to protect either creditors or surviving members. But on the 25th day of February, 1878, the administrators of John McDonnell made an inventory of the machinery, fixtures, shafting, and stock in the mill, and estimated the one-third surplus over all liabilities at $4,443.66. The administrators on the same day, by an assignment under seal, in consideration of $4,440, sold the interest owned by the late John McDonnell in the firm, not including real estate, to one O'Brien, subject to the payment of one-third of the debts and liabilities of the firm. O'Brien on the same day transferred the same to Lucy McDonnell, the widow of John, and to their son, Willard, and the sum of $4,440 was then paid to the administrators. The court finds that the firm was solvent upon John McDonnell's death. No account was then taken of the real estate and buildings, because they were incumbered by a mortgage for $25,000, then and still outstanding, and were not supposed to be worth any surplus. The indebtedness of the firm, independent of the mortgage, was then estimated at $95,681.72, and probably was larger. Lucy and Willard McDonnell now entered into copartnership with the surviving members of the first firm, and formed a new or second firm, but with the name of the first firm; they agreeing to pay John McDonnell's share of the old firm's liabilities. In November, 1878, Willard McDonnell died, and Lucy succeeded to his property; and she, with Kline and Harvey, formed a new or third firm, under the old name, the third firm assuming the obligations of the preceding firms. In October, 1879, it appearing that John McDonnell's individual estate was insolvent, his real estate was, under the surrogate's decree, sold to pay his debts, and under such sale his interest in the real estate used by the firm was sold to Edward McDonnell for $25, and a conveyance given him. Edward never joined the firm. The firm continued business, paying up old debts, and making new ones, and buying new machinery, and making improvements, until August, 1883, when Lucy McDonnell sold all her interest in the firm and property of the third firm to Augustus Clark; he assuming her share of the firm liabilities. Edward McDonnell at the same time sold Clark the real estate he had acquired upon the surrogate's sale. Clark agreed to pay $20,500 for both Lucy's and Edward's interests. He paid $10,500 cash, and gave Edward a mortgage for $10,000. This is the mortgage now held by the defendant McConihe, who became its owner through successive assignments. The conveyance by Edward, and the mortgage, are of an undivided one-third of the mill premises. The third firm was solvent when Clark bought Lucy Mc-

Donnell's interest. This fact is found, but it rests upon the assumption that the buildings and improvements were partnership property. Clark now entered the firm in Lucy McDonnell's place, and the fourth firm of the same name was now formed, it assuming the liabilities of the previous firms. The court finds that there is no proof that any debts of the first firm were now outstanding. If any remained unpaid, they had been assumed by the subsequent firms. The fourth firm continued the business until January 31, 1882, when Harvey, one of the partners, sold his interest to the other partners, Clark and Kline, who, under this name, formed the fifth firm; assumed to pay the debts of the preceding firms; also to pay Harvey, the retiring partner, $22,500, to secure $15,000 of which they gave him a mortgage upon the mill premises. This mortgage is now owned by the defendant Julia, wife of the plaintiff. Whether the fourth firm was solvent when it was succeeded by the fifth the court does not find. Clark & Kline, the fifth firm, continued the business until December, 1883, when, being insolvent, they made a general assignment to Hinman and Crane for the benefit of their creditors, making preferences. These assignees sold the mill premises and machinery to Francis A. Fales, subject to all liens and incumbrances, for $35,000. Fales had notice of the $10,000 mortgage given to Edward McDonnell by Clark, now held by McConihe. Fales and wife then sold two-thirds of the premises and property purchased by him to the plaintiff, who also had notice of the $10,000 mortgage. Fales sold the remaining one-third to one Bicknell, and Bicknell and plaintiff gave Fales a mortgage for $43,143. The defendant McConihe obtained judgment in an action in the supreme court, in which he was plaintiff, and this plaintiff and others defendants, for the foreclosure of the $10,000 mortgage given to Edward McDonnell by Clark, and for the sale of the premises. This action is brought by the plaintiff for a partition by sale of the premises. The issue in the case presented by this appeal respects the validity and priority of the $10,000 mortgage. The plaintiff prays that it be declared to be a lien only upon the naked real estate, in its order of priority, but not at all upon any of the improvements upon the property; that an account of these improvements be taken, and their value be paid upon the other incumbrances, and the balance to the plaintiff. The effect of such a judgment would be that nothing would be applicable to the $10,000 mortgage. The judgment appealed from denied this relief, and established the validity of this mortgage.

We think the judgment should be affirmed. The very question whether this mortgage was a valid and subsisting lien upon the premises described in it was tried and determined in the action brought to foreclose the mortgage by the defendant McConihe against Fales and this plaintiff. It was there determined that, as between the parties to that action, it was a valid lien to some extent. That issue cannot be again litigated between the same parties in this action. *McConihe* v. *Fales*, 107 N. Y. 404, 14 N. E. Rep. 285. Consaulus, the plaintiff here and the defendant there, tendered to McConihe, the owner of the mortgage, certain issues respecting the extent of the property covered by the mortgage. One of those issues was whether the machinery and fixtures in the mills were covered by the mortgage, and the decision was they were. Another issue was whether the real estate itself, including all the improvements upon it, was not partnership property, subject to the partnership debts of the first firm, it being insolvent, and was therefore purchased by Edward McDonnell, and sold by him to Clark, and by Clark mortgaged to McDonnell, subject to the lien of the creditors of the firm, which debts, having been assumed and renewed by the succeeding firms, were still liens upon the property, prior to the mortgage, to an extent that left no surplus to which the lien of the mortgage could attach. That issue was decided against this plaintiff. That case was tried before a referee. Had the referee decided against this plaintiff in the former action upon the ground that, in such an action, the issue tendered by him could not be tried, then this plaintiff could now urge

that he did not there have his day in court, and therefore was not precluded from having it here. *Helck* v. *Reinheimer*, 105 N. Y. 470, 12 N. E. Rep. 37. But he did then have it, and the referee found fully upon the issues and upon the requests he presented. It is true that, when the case was reviewed upon appeal, the court of appeals said, among other things, in their opinion, that Fales, the purchaser, being in the undisturbed possession of the premises, which he purchased subject to all incumbrances, could not resist, upon the ground of failure of title, the foreclosure of a mortgage given by his grantor to secure the payment of the purchase money for that title, (*McConihe* v. *Fales, supra;*) that the title which supports a possession is presumed valid so long as the possession under it is undisturbed; that the court, in such a case, will not inquire what extent of interest the mortgagee actually acquired by his mortgage. But the court goes further, and holds that, upon the facts found by the referee, which it says the evidence amply supports, Clark, by his deed from Edward McDonnell, acquired all the property bargained for, and the precise consideration of this mortgage; that Edward McDonnell had the legal title to the estate he sold to Clark; that if there were any existing equities which could defeat that title, or narrow its extent, there was not any evidence that they ever would; that, even if the assignees of Clark & Kline could have questioned the lien of this mortgage, they did not attempt to do it; they did not reserve the right to do it, nor transfer it to Fales, but impliedly made the title of Fales depend upon the payment of this mortgage. Consaulus, this plaintiff, as the grantee of Fales, stands in his shoes. We do not discover any material issue in this case which this appeal brings up for review which did not exist in the foreclosure case. It is true, this plaintiff in his complaint alleges that he sold each of the five firms wool upon credit, but he does not allege any existing indebtedness of the first firm to him, nor of any firm except the last. The referee finds that the debts of the first firm were paid. The theory of his action appears to be that, having taken title under the assignees of Clark & Kline, he succeeds to their rights as trustees to enforce the equities of partners and creditors among themselves, and against each other, and because, by possibility, such equities, if adjusted, would override the McDonnell mortgage, therefore, it should be overridden and displaced, not for their benefit, but solely for his own. The decision in *McConihe* v. *Fales, supra*, is fatal to such a contention.

Whatever right the plaintiff might have as a creditor of Clark & Kline, he would have to obtain through their assignees. *Crouse* v. *Frothingham*, 97 N. Y. 105. He has not made them parties. If it were true, therefore, that the improvements upon the real estate were partnership property purchased by Clark of Lucy McDonnell, and the real estate were only the naked one-third of the land purchased by Clark of Edward McDonnell, the plaintiff, in order to draw that line of distinction between the two properties, would need to do it through the assignees for the benefit of the creditors at large. Clark, as the owner of both the land and the improvements thereon, gave a mortgage, which covered both, so far as, between mortgagor and mortgagee, the improvements formed part of the real estate; and this plaintiff purchased the real estate subject to this mortgage. He stands in the same position as any other purchaser purchasing upon like conditions. For aught we know, this mortgage reduced the consideration he paid for the property. At any rate, he has no title to the sole benefit of the equities due to the creditors at large; and, as this action is an unwarranted attempt to appropriate to himself the sole benefit of them, it must fail. It is not improbable that, if an exact account could be taken of the condition of these successive firms at the time of their successive dissolution, it would be found that they were insolvent, and that Edward McDonnell, when he purchased the interest of John McDonnell's estate in the partnership real estate, really purchased only a legal title, subject to be wholly defeated in equity if the affairs of the first firm had been

wound up, and hence that the mortgage he took back from Clark was liable to be wholly defeated. It is also probable that the debts of the first firm were not paid from the assets of that firm, but were renewed and transferred, in in the course of business, by the successive firms; the aggregate never diminishing, but always increasing. But it is nevertheless true that all the debts of that firm were retired to the satisfaction of its creditors. The successive firms, therefore, did not have a *scintilla* of equity to keep on foot against the first firm whatever of its obligations it assumed over and above the means it received from it to pay them with, for they were bound by their agreement to pay the debts of the old firm in consideration of obtaining its assets; and, whether such a bargain was good or bad, they could not escape its hardships.

Nor does any equity survive to the creditor of the first firm. Equity follows the law. The first firm, we may assume, was indebted to this plaintiff for wool. When the second firm succeeded the first, the plaintiff sold it more wool; and the second firm, with the proceeds of this second installment of wool, paid him what the first firm owed him; or we may assume he took the paper of the second firm for the debt of the first. However it was arranged, he was content to substitute a new creditor or a new credit for the old, and to repeat such transactions with the successive firms. The first firm had been dissolved more than seven years before this action was commenced. No legal representative of any member of that firm, or of any of the firms, is a party to this action. The provision made by the first and successive firms for the payment of debts is, so far as we know, a provision accepted and ratified by the creditors, including this plaintiff. That provision may have been adequate or not; it may have failed through the misfortunes of the last firm, after complete ratification and acceptance, by the creditors, of the provisions in their favor. Be this as it may, the burden would rest upon the creditor, if this were a proper action in which to do it, to show that he still has an equity, and that, although he accepted his legal remedy against each firm, he did not thereby waive his equity against any of them. It is not only shown that he accepted a new creditor for the old, that he delayed pursuing his remedy against him until it became impaired, but that new rights intervened, and this mortgage was placed on the market, and new parties sunk their fortunes in trying to provide for the old debts, under the belief, which his acceptance of the new creditors induced, that the real estate purchased of Edward McDonnell was free from old equities, and worth the obligations assumed in consideration of its purchase. Clearly, this plaintiff, as creditor, must stand upon his old equity against the first firm, or upon the new obligations of subsequent firms, given upon the faith that, because the new obligation is pledged, the old equity is superseded.

But this plaintiff recites in his complaint that he has placed his demands in a judgment against the latest firm. The remedies are inconsistent; for, if the equity survives, the consideration upon which the judgment rests fails. We do not overlook the fact that Lucy McDonnell, in succeeding to the interest of John McDonnell in the first firm, was probably understood to succeed to all the interest in the improvements upon the real estate which the firm property or credit created; that Edward McDonnell, in purchasing the real estate interest for $25, was supposed to be purchasing a naked title which embraced little or no actual value. These interests stood separate until Clark bought them both. They might well have been a source of disquietude to the other members of the firm and to its creditors. But upon such purchase they were merged in one owner, subject to this mortgage of $10,000. Clark did not purchase without inquiry. His purchase apparently placed the creditors and members of the new firm, of which he was a member, in an improved condition. The disquieting condition was removed. All the property was now merged in the firm. Whether that was a good transaction or not is not material; it was competently made, and it brought to the creditors new sec-

rity, and imposed upon Clark new burdens, to their apparent benefit. The plaintiff, with his judgment against Clark & Kline, has adopted whatever benefit can accrue to him from his judgment against them. Can he have a judgment which binds the individual estate of Clark upon the debt of a firm of which Clark was not a member, and repudiate the transaction by which Clark became surety for that debt? We think not. The judgment should be affirmed, with costs.

LEARNED, P. J., and INGALLS, J., concur.