(18 App. Div. 501.)

REED & BARTON v. ASHE.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

1. PARTNERSHIP—LIABILITY OF RETIRING PARTNER—PAYMENT OF FIRM DEBT.
    Where the creditor of a firm, after its dissolution, takes the individual negotiable note of the continuing partner in payment of a firm debt, with knowledge that the maker has assumed and agreed to pay the partnership debts, he thereby cancels his claim against the firm, and discharges the retiring partner.

2. SAME—EXTENSION OF TIME FOR PAYMENT.
    Where a continuing partner assumes and agrees to pay the firm debts, the acceptance by a creditor of the individual negotiable notes of the continuing partner, with a knowledge of the facts, is an extension of the time of payment, which discharges the retiring partner.

8. SAME—INDEMNITY.
    The liability of the retiring partner in such case is not affected by the fact that, at the time of dissolution, he was indemnified by a bond for any payments he might be compelled to make.

Appeal from trial term.

Action by Reed & Barton, a corporation, against Thomas F. Ashe, in which there was a verdict directed by the court in favor of plaintiff for only a part of the amount claimed. Plaintiff moves for a

new trial, on exceptions taken at the trial, and ordered to be heard in the first instance at the appellate division. Motion denied, and judgment on the verdict directed.

The plaintiff, a manufacturing corporation, with its principal place of business at Taunton, Mass., seeks by this action to recover of the defendant a balance of an account alleged to be due the plaintiff from the firm of Smyth & Ashe, of which firm the defendant was at one time a member. This firm, which consisted of the defendant and Frank A. Smyth, was organized on the 1st day of May, 1893, and continued in business as jewelers and silversmiths, at the city of Rochester, until the 8th day of January, 1895, when Smyth purchased the interest of the defendant therein for the sum of $10,000, and the business was thereafter carried on by Smyth individually. At the time of the dissolution of the firm, Ashe transferred his interest in the business to Smyth by a bill of sale, in which the latter assumed and agreed to pay all the debts of the firm then existing; and, to indemnify the defendant against any such debts, he procured his brother Thomas A. Smyth to execute a bond in due form, which he thereafter delivered to the defendant. At this time the assets of the firm amounted to $52,000, and its liabilities to $32,000. Included in the latter was an indebtedness to the plaintiff, being the balance of an account for goods, wares, and merchandise purchased of it, and which amounted to the sum of $731.18. As soon as the dissolution of the firm was consummated, notice thereof, and also that the debts of the firm had been assumed by Smyth, was mailed to all the firm creditors, including the plaintiff. This notice was received by the plaintiff in due course of mail, and the facts therein contained were subsequently stated verbally by Smyth to one Kenrick, the plaintiff's duly accredited agent, who thereafter communicated the information thus obtained to his principal.

On the 6th day of March, 1895, Smyth wrote and mailed to the plaintiff the following letter:

"Rochester, N. Y., Mar. 6th, 1895.

"Reed & Barton, Taunton—Dear Sirs: Being unable to send you any cash before next week, and thinking perhaps you might need money at this season, I send you five hundred dollars in interest-bearing notes. The balance of account I will endeavor to send you next week. This also would be of great assistance to me, as business is very slow at present. Thanking you for your confidence and support, I remain,

"Yours, very resp'y,                                    Frank A. Smyth."

Inclosed in this letter were two notes of $250 each, signed by Smyth individually, which were received by the plaintiff, and applied upon the account of Smyth & Ashe. These notes were renewed from time to time, but were never in fact paid. Subsequently to the giving of these notes, Smyth sent the plaintiff a check for $100, and early in May, 1895, he gave another check for a like amount to the agent, Kenrick. Both of these checks were paid, and the avails thereof were applied to the reduction of the account against the firm. In June, 1895, Frank A. Smyth became insolvent, and, in October following, this action was commenced, the judgment demanded being for the sum of $531.18. The cause came on for trial at the Monroe trial term, in May, 1896; and at the close of the evidence the counsel for each party asked for the direction of a verdict, whereupon the court directed a verdict in favor of the plaintiff for $35.08, that being the balance of the account due from the firm of Smyth & Ashe, with interest thereon, after deducting the amount represented by the checks and notes.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Quincy Van Voorhis, for plaintiff.
Clarence J. Browning, for defendant.

ADAMS, J. The rule is too well settled to admit of any question that where a partnership is dissolved, and one partner takes the partnership property, and agrees to pay the partnership debts, as

between himself and his former partner, he thereby, as to those debts, becomes the principal debtor, while the retiring partner occupies the relation of a surety only. Savage v. Putnam, 32 N. Y. 501; Morss v. Gleason, 64 N. Y. 204; Colgrove v. Tallman, 67 N. Y. 95. And, when such an arrangement is fairly and fully brought to the knowledge of a creditor of the firm, he is bound to respect the rights of the debtor who thus becomes a surety, and thereby acquires the right to protection as such. Palmer v. Purdy, 83 N. Y. 144; Grow v. Garlock, 97 N. Y. 81; Bank v. Underwood, 2 App. Div. 342, 37 N. Y. Supp. 838.

By the evidence contained in the record before us it is quite conclusively established that not only did Smyth assume payment of the existing debts of his firm, as one of the conditions of the sale by the defendant to him of the former's interest in the partnership, but that the plaintiff was expressly informed of this fact, and fully recognized the new relation existing between the members of the late firm in its subsequent dealings with the one who remained in charge of the business. The relation of the parties being thus established, it follows that the defendant is discharged from all liability as a partner by any dealings between the creditor and principal debtor which are inconsistent with his rights as a surety of the latter. In this case it is made to appear that some two months after the defendant had retired from the firm, and notice of that fact had been communicated to the plaintiff, the latter accepted the individual notes of Smyth for $500, and credited the same upon the firm account. These notes were negotiable in their character, and they were renewed from time to time as they, or the renewals thereof, matured; and upon the 1st day of May, following, the plaintiff rendered an account, which clearly indicated that the notes had been treated as payments to the amount thereof. It would seem, therefore, that the plaintiff has fairly brought itself within the well-settled rule that where a creditor of a partnership, after the dissolution thereof, takes the individual negotiable note of the partner remaining in charge of the business in payment of a firm debt, with knowledge that the maker of the note has assumed and agreed to pay the partnership debts, he thereby cancels his claim against the firm, and discharges the retiring partner. Story, Partn. §§ 155, 156; Arnold v. Camp, 12 Johns. 409; Waydell v. Luer, 3 Denio, 410; Millerd v. Thorn, 56 N. Y. 402. But, on the other hand, if the evidence does not fairly warrant the conclusion that the two notes were received as payments on account, their acceptance and use certainly worked a suspension of the right of action upon so much of the debt as they represented, and such an extension of the time of payment as discharged the surety. The proposition thus stated is supported by a long line of decisions, and has been recently recognized and affirmed in at least two instances by this court: Shipman v. Kelley, 9 App. Div. 316, 41 N. Y. Supp. 328; Lyth v. Hingston (Sup.) 43 N. Y. Supp. 653.

It is contended, however, by the learned counsel for the plaintiff, that the principles which have thus far been invoked have no application to the case in hand, by reason of the fact that the defendant,

when he retired from the firm, was indemnified by the bond of Thomas A. Smyth for any payments of the firm debts which he might be called upon to make; his theory being that, when the defendant exacted and received this security, he no longer sustained the relation of surety to his former partner.    Several cases are cited which it is claimed support this contention, but we are unable to find in them any authority for the position assumed by the counsel.    It may be well that in equity a creditor would be entitled to the benefit of any collateral security which the principal debtor had given to the surety, or to a person standing in the situation of a surety, for his indemnity, but we do not understand that it has anywhere been decided that the mere giving of such indemnity changes the relation of the parties.    In a recent decision of the late general term of the Fifth department it was held that a surety, in a case very like the one under consideration, who had taken a chattel mortgage by way of indemnity, was discharged in consequence of an extension of time in the payment of a firm note, which had been given to the creditor by the principal debtor.    Clark v. House (Sup.) 16 N. Y. Supp. 777.    It is true that the question now under consideration was only indirectly adjudicated in that case.    But this fact does not necessarily deprive the decision of all weight as an authority, inasmuch as it is quite apparent that the reason why more prominence was not given this particular feature of it was that neither counsel nor court regarded it as presenting any serious difficulty.

We have examined the various exceptions to the admission and rejection of evidence to which our attention has been directed by the plaintiff's counsel, without finding any which present reversible error; and our conclusion is that the verdict was properly directed, and that the motion for a new trial should consequently be denied.

Plaintiff's exceptions overruled, motion for a new trial denied, and judgment directed upon the verdict, with costs of this motion to the defendant.    All concur; WARD, J., in result.