FRANK DRAKE, Plaintiff, *v.* JOSEPH H. HODGSON and Others, Defendants.

Supreme Court, New York Special Term, April, 1922.

Partnership — relation of retiring partner to firm creditors is that of surety — stockbrokers — liability of partner who has retired to customer who continues his account with firm — novation — consideration — when continuance of account and of trading therein with new firm releases retiring partner from liability for loss occurring when firm later goes into bankruptcy.

Where, upon the dissolution of a partnership, the continuing partner takes over the assets and asumes the liabilities of the old firm, the relation of the retiring partner is that of surety as to the obligations of the old firm existing at the dissolution, and a creditor who has been given notice of the facts is bound to respect such relation.

The retiring partner, however, may be released from his liability as such surety and a novation created whereby the creditor is deemed to have released the retiring partner and to look for his debts to the continuing firm.

Where in an action to recover a balance alleged to be due on an account with a firm of stockbrokers under a contract determinable at will, which action was brought on the theory that H., the retiring partner, and the only defendant served with process, was liable as surety on certain transactions had with the firm, it appeared from the amended complaint pleading an account stated that the firm's statements received by plaintiff on the dissolution of the firm showed that the firm should have had in its possession or under its control securities of plaintiff of the value of $266,552, held as collateral for plaintiff's indebtedness amounting to $33,723.42. It was further alleged that while the new firm was still in possession of the securities it was adjudged an involuntary bankrupt; that plaintiff had received none of his securities prior to the filing of the petition in bankruptcy except that between certain dates, two years before the bankruptcy, the proceeds of the sales of certain of the securities had been credited on his indebtedness to the firm and that the balance of the securities which should have been to his credit and in the possession of or under the control of the firm on the date of the filing of the petition in bankruptcy, was reasonably worth a certain sum, and that after deducting therefrom certain corporate stock received by plaintiff, together with the proceeds of other shares of stock, there remained a balance due and owing to plaintiff of a certain sum for which judgment was demanded. *Held*, that a cause of action against H., if any, arose in favor of plaintiff only on the date of the dissolution of the old firm, but the facts pleaded fairly showing that upon such dissolution plaintiff released H. and thereafter relied entirely on the new firm as his brokers, defendant's motion for judgment on the pleadings dismissing the amended complaint will be granted, with costs.

It was a valuable consideration and benefit to plaintiff to have his indebtedness continued after the dissolution of the old firm, and to have the new firm take over such indebtedness with the securities as margin, and when H. turned over to the new firm said securities and parted with his lien thereon for such indebtedness, there was such a consideration, and the account stated having been assumed with plaintiff's consent and to his advantage by the new firm, H. was released from any liability to plaintiff, and regardless of separate defenses which went to substantiate and corroborate in this respect the allegations of the amended complaint, and the inference that may be legitimately drawn therefrom, the amended complaint did not state a cause of action against the defendant H.

Even if the amended complaint did state such a cause of action the facts alleged in the separate defenses pleaded must, both on defendant's motion to dismiss

the complaint and upon plaintiff's motion to overrule his demurrer to the separate defenses, be taken as true, and as proof of such facts would constitute good defenses to any cause of action set up in the complaint, as against H., the plaintiff's motion to overrule the demurrer will be denied, with costs.

ACTION to recover balance alleged to be due from firm of stockbrokers.

*Goldman & Unger*, for plaintiff.

*Walton, Bannister & Hubbard*, for defendant Hodgson.

DAVIS, J. This action is brought to recover the sum of $204,601.27, the balance alleged to be due plaintiff from defendants on account of certain stock transactions with the defendants stockbrokers. The action is brought on the theory that the defendant Joseph H. Hodgson, the only defendant served, is liable as surety, as a retiring partner, on certain transactions had with the firm of Gay & Sturgis, of which originally he was a member. The amended complaint alleges that from about July 1, 1910, to and including December 31, 1911, the defendants Hodgson, Gay, Sturgis and Hall were copartners engaged in the stockbrokerage business under the firm name of Gay & Sturgis, and that during such period plaintiff employed said firm as his brokers to execute his orders to purchase, sell and deal in securities; that the firm accepted said employment and agreed to execute plaintiff's orders for the purchase and sale of and the dealing in securities, and p'aintiff agreed to furnish money and securities as margin for the purpose of carrying out plaintiff's orders; that during the period between July 1, 1910, and December 31, 1911, plaintiff had on deposit with such firm large sums of money and securities as margin for the purpose of carrying out his orders, and plaintiff gave numerous orders to said firm to purchase and sell and deal in securities for plaintiff; that said firm accepted the orders and notified plaintiff of the execution of such orders, and from time to time plaintiff deposited with the firm further moneys and securities upon the representation that his orders had been and were being executed; that, according to the notices and statements sent to plaintiff, defendants should have had in their possession or under their control on December 31, 1911, securities be'onging to plaintiff of the value of $266,552, and plaintiff owed defendants $33,723.42 for advances alleged by them to have been made in the execution of plaintiff's orders; that on or about December 31, 1911, such partnership was dissolved and the business was continued by the defendants Gay, Sturgis and Hall under the firm name of Gay & Sturgis, and such firm continued in possession of plaintiff's securities. On May 22, 1914, a petition in involuntary bankruptcy was filed against the firm, and on June 8, 1914, it was adjudicated a bankrupt. Prior to May 22,

1914, plaintiff received none of his securities, except between January 9, 1912, and August 1, 1912, said firm sold $400 \frac{9}{17}$ shares of Miami stocks, the proceeds of which, to wit, $10,377.97, were credited to plaintiff's indebtedness to the firm, and, further, on or about March 27, 1912, 400 shares of Butte Coalition stock were converted into 208 shares of Anaconda stock, plus $1,784, which sum was also credited to plaintiff's indebtedness to said firm. It is further alleged that the balance of the securities which should have been to the credit of the plaintiff in the possession or under the control of said firm of Gay & Sturgis on May 22, 1914, was reasonably worth the sum of $234,172; that plaintiff has received none of such securities, except certain shares of stock of the value of $31.50, together with the proceeds of other shares of stock amounting to $1,027.85, together with the sum of $6,949.93, making in all $8,009.28, and leaving a balance due and owing to the plaintiff of $204,601.27, for which judgment is demanded. In his answer the defendant Hodgson admits that from about July 1, 1910, up to or in or about June, 1911, he was a partner with Gay, Sturgis and Hall under the firm name of Gay & Sturgis, and that between those dates plaintiff employed said firm as brokers to execute his orders to purchase, sell and deal in securities, and that on December 31, 1911, the defendants Gay, Sturgis and Hall, composing the firm of Gay & Sturgis, had in their possession or under their control the securities belonging to plaintiff. It is denied that the partnership was dissolved on December 31, 1911, and it is alleged that the dissolution took place on or about June 1, 1911. It is further alleged that the sale of the securities mentioned in the complaint as having been sold were sold by the firm of Gay & Sturgis, composed of Gay, Sturgis and Hall, and the proceeds were credited on plaintiff's indebtedness to such firm. It is also admitted that the other shares and securities and money alleged to have been received by plaintiff were in fact received by plaintiff. For a first separate defense the answer sets up the six years' Statute of Limitations. For a second separate defense it is alleged, after various denials, that between on or about July 1, 1910, and in or about June, 1911, defendant was a partner with Harry Gay, Irving J. Sturgis and R. Linzee Hall, engaged in the stockbrokerage business under the name of Gay & Sturgis; that the plaintiff employed said firm as his stockbrokers to execute his orders for the purchase and sale of securities on margin and otherwise, and that during said period plaintiff maintained a current account with said firm and bought and sold various securities through said firm; that from July 1, 1910, to in or about the month of June, 1911, plaintiff deposited with said firm various securities and sums of money for his said

account, and that the said firm made advances to the plaintiff and held the said securities so deposited and purchased as collateral to secure the said firm in their said advances; that in or about June, 1911, this defendant withdrew from said firm and said firm was thereupon dissolved; that at the time of said dissolution the plaintiff owed to said firm a large sum of money, and said firm held securities belonging to said plaintiff as collateral security for said indebtedness and had in its possession or under its control all of such securities belonging to the pla'ntiff, as shown in his account with said firm; that upon said dissolution Harry Gay, Irving J. Sturgis and R. Linzee Hall, three of the above-named defendants, formed a new partnership and continued the business of stockbrokers under said firm name of Gay & Sturgis and took over all of the assets and assumed all of the liabilities of said old firm; that this defendant notified plaintiff of his withdrawal from said firm and of the dissolution of said firm and the formation of the new firm and that said new firm had taken over all the assets and assumed all the liabilities of said old firm; that the plaintiff thereupon employed the said new firm of Gay & Sturgis as his stockbrokers and transferred his account from said old firm to said new firm; that, with the knowledge and consent of the plaintiff, all of the securities held by said old firm of Gay & Sturgis or under their control belonging to the plaintiff were transferred to the said new firm, together with the claim of said old firm against the plaintiff for his said indebtedness; that plaintiff accepted the obligation of said new firm in respect to all the transactions had by the plaintiff with said old firm in substitution for the obligation of said old firm as constituted when this defendant was a member thereof, and agreed to and did discharge this defendant from any and all liability to the plaintiff; that thereafter the plaintiff continued to employ the said new firm as his stockbrokers with respect to his said account and said new firm bought and sold stocks and securities for the account of the plaintiff, and pursuant to his orders, down to and including April 21, 1914, upon which date said new firm made an assignment for the benefit of its creditors; that by reason of the facts above alleged this defendant was released and discharged from any and all liability with respect to plaintiff's said account. For a third separate defense it is alleged that after his withdrawal from and the dissolution of said old firm of Gay & Sturgis, this defendant notified the plaintiff of his said withdrawal and of the said dissolution, and that the defendants Gay, Sturgis and Hall were continuing the business and had taken over all of the assets and assumed all of the liabilities of the said old firm, including the said securities in the account of the said

plaintiff, and the claim of said old firm against the said plaintiff with respect thereto; that thereafter the plaintiff employed said new firm as his stockbrokers and continued to deal with said new firm as his stockbrokers with respect to said account, and continued to purchase, sell and deal in stocks and securities through said new firm; that after this defendant's said withdrawal and the dissolution of the said old firm and while the said new firm of Gay & Sturgis had the securities of this plaintiff in their possession or under their control, this defendant informed plaintiff that in connection with an attempted settlement of this defendant's claim against the said firm of Gay & Sturgis, information had come into defendant's possession which convinced him that said firm was either in financial straits or that the management thereof had become dishonest and this defendant urged the plaintiff that he close his said account with the said firm, but that despite the requests and protests of the defendant the plaintiff continued to deal with the said new firm until April 21, 1914, upon which date said firm assigned for the benefit of creditors; that on or about May 22, 1914, an involuntary petition in bankruptcy was filed against the said Harry Gay, Irving J. Sturgis and R. Linzee Hall, as partners doing business under the firm name of Gay & Sturgis, and that the said firm was adjudicated bankrupts on or about June 8, 1914; that on or about July 11, 1914, plaintiff proved his claim against the bankrupt estate of said Gay & Sturgis; that said claim was duly allowed and that plaintiff on or about July 5, 1916, received the first dividend thereon from the trustee, of $3,647.10; that thereafter and on or about October 30, 1916, by and pursuant to a decree duly entered upon motion of this plaintiff in reclamation proceedings in said bankruptcy, 304 shares of the stock of the Eastern Talc Company were delivered to the plaintiff, and his claim reduced by the sum of $3,040, being the value of said stock; that the plaintiff at no time made any demands on this defendant or asserted any claim against this defendant of any kind until shortly before the institution of this suit in the year 1917. By supplemental answer, it is alleged that on or about July 30, 1918, by and pursuant to a decree duly entered upon motion of this plaintiff in reclamation proceedings in bankruptcy proceedings instituted on or about July 11, 1914, against Harry Gay, Irving J. Sturgis and R. Linzee Hall, as copartners doing business as Gay & Sturgis, the plaintiff received in said bankruptcy proceedings certain stocks, or the proceeds thereof, and his claim was reduced by the sum of $8,738.05, and that thereafter and on or about December 26, 1918, plaintiff received a second and final dividend upon his said claim in said bankruptcy proceedings

amounting to $3,302.83. The plaintiff has demurred separately to the three separate defenses as insufficient in law on the face thereof, and also to the supplemental answer on the same ground. The plaintiff now moves for a hearing of such demurrer as a contested motion and the defendant Hodgson has moved for judgment on the pleadings dismissing the amended complaint. " It is the general rule that a partner can only relieve himself from liability for subsequent transactions had with his former partners, in the partnership name, by giving notice of his withdrawal." *Elmira I. & S. R. M. Co.* v. *Harris,* 124 N. Y. 280, 286. It is also well settled that when notice is given of the dissolution of the partnership and the continuing partners have taken over the asets and assumed the liabilities of the old firm and notice of such is given to the creditor, the relation of the retiring partner is that of surety as to the obligations of the old firm existing at the time of dissolution, and the creditor is bound to respect such relation. The relation of the retiring partner as surety, however, may be changed and he can be released from such liability and a novation created whereby the creditor is deemed to have released the retiring partner and to look. for his debt to the continuing firm. *Filippini* v. *Stead,* 4 Misc. Rep. 405; *Consaulus* v. *McConihe,* 2 N. Y. Supp. 89, 93; affd., 119 N. Y. 652; *Reed & Barton* v. *Ashe,* 18 App. Div. 501; *Matherson* v. *Belden,* 14 id. 519; *Bendix* v. *Ayers,* 21 id. 570; *Dodd* v. *Dreyfus,* 17 Hun, 600; *De Witt* v. *Monjo,* 46 App. Div. 533; *Lane & Co.* v. *United Oil Cloth Co.,* 103 id. 378; *Davis* v. *Keyes,* 38 N. Y. 94; *Michelin Tire Co.* v. *Robbins,* 173 App. Div. 955; *Colgrove* v. *Tallman,* 67 N. Y. 95; *Regester* v. *Dodge,* 6 Fed. Rep. 6; *Hart* v. *Alexander,* 7 C. & P. 746; 2 M. & W. 484. The Partnership Law (Laws of 1919, chap. 408), section 67, which is but a codification of the law as heretofore laid down, states: 2. A partner is discharged from any existing liability upon the dissolution of the partnership by an agreement to that effect between himself, the partnership creditor and the person or partnership continuing the business; and such agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business. It thus appears from the amended complaint in this action that there was an employment of the original firm of Gay & Sturgis by plaintiff as his stockbrokers, dealings with such firm until December 31, 1911, on which date said firm's statements received by plaintiff showed that they should have had in their possession or under their control securities of plaintiff of the value of $266,552, and that plaintiff owed such firm at such time $33,723.42 for advances in the execution of plaintiff's orders. These securities, of course, were collateral

for such advances.  An account stated on December 31, 1911, is thus alleged.  On this date the plaintiff claims the original firm of Gay & Sturgis was dissolved and the business was continued by the defendants Gay, Sturgis and Hall under the same name of Gay & Sturgis.  It further appears that the new firm continued in possession of the plaintiff's securities alleged to have been on December 31, 1911, in the possession or under the control of the old firm of Gay & Sturgis.  It also appears that between January 9 and August 1, 1912, the new firm of Gay & Sturgis sold and converted into other stock certain shares of stock belonging to plaintiff, the proceeds and surplus of which were credited to plaintiff's indebtedness to the new firm of Gay & Sturgis.  It is then alleged that the balance of such securities which should have been in the possession or control of said new firm on May 2, 1914, the date of the filing of an involuntary petition in bankruptcy against the new firm of Gay & Sturgis, were reasonably worth $234,172.  The receipt is then alleged, after May 22, 1914, of certain shares of plaintiff's stock and the proceeds of the sale of certain other shares of stock.  We thus find that from the sale of plaintiff's securities by the new firm of Gay & Sturgis the sums of $10,377.97 and $1,784 were realized and the indebtedness of plaintiff reduced to $21,561.45.  From sales and returns of stock it appears that after May 22, 1914, $8,009.28 was realized by plaintiff.  Adding the balance of indebtedness and the last total amount received and deducting the balance from $234,172, we have $204,601.27, the amount for which plaintiff sues.  The contract of employment of the original firm as plaintiff's brokers was determinable at will.  It determined on the dissolution of such firm on notice to plaintiff.  Hodgson then on the dissolution of the old firm ceased to act as the plaintiff's agent in further stock dealing.  His liability on such date was for obligations secured, that is, to account and pay over as a member of such firm the securities of plaintiff and the balance due.  On the date of the firm's dissolution the remaining partners continued the business for the purpose of winding up the affairs of the old partnership.  Plaintiff and the new firm could not go on dealing on new orders on the faith of plaintiff's securities as margin so as to bind Hodgson.  An account stated was made on December 31, 1911.  There is no allegation that the amount due plaintiff was not on hand at such time nor any allegation of any insolvency of the defendants.  A cause of action against Hodgson, if any, arose in plaintiff's favor only on the date of the dissolution of the old firm, on whatever date that might have been.  He was not obliged after such date to further continue to act as plaintiff's broker, except so far as to account for securities and money due

up to that time. But plaintiff knew of the dissolution of the old firm, knew of the continued possession by the new firm of his securities, and thereafter proceeded to deal with such new firm. The debt of plaintiff which the new firm assumed was reduced by sales and transactions by the new firm with plaintiff's knowledge. New orders were taken and contracts entered into by the new firm which affected the indebtedness and the collateral securities and the liability of Hodgson as it existed on December 31, 1911. It was the new firm which should have had in its possession on May 22, 1914, $234,172 worth of securities belonging to plaintiff, as plaintiff alleges. The plaintiff after the dissolution of the old firm dealt with the new firm, relying on its responsibility only. The facts alleged in the amended complaint fairly show that the plaintiff on the old firm's dissolution released Hodgson, and thereafter relied entirely on the new firm as his brokers. It was a valuable consideration and benefit to plaintiff to have his indebtedness continued after the dissolution of the old firm and to have the new firm take over such indebtedness with the securities as margin. There was a consideration when Hodgson turned over to the new firm the collateral securities and parted with his lien thereon for the indebtedness. It is evident that the account stated was assumed with plaintiff's consent and to his advantage by the new firm, and Hodgson was thus released from all liability to plaintiff. This fairly appears from the amended complaint, regardless of the defenses in Hodgson's answer, which defenses go to substantiate and corroborate in this respect the allegations of the amended complaint and the inference that may be legitimately drawn therefrom. In my opinion the amended complaint does not state a cause of action against the defendant Hodgson. But even if it does, the separate defenses are sufficient in law, and if the facts alleged therein are proved they would constitute good defenses to any cause of action set up in the complaint as against Hodgson. On these motions the facts alleged in the answer must be taken as true. The motion to overrule the demurrer is denied, with ten dollars costs. The motion for judgment dismissing the amended complaint is granted, with ten dollars costs. Settle order on notice.

Ordered accordingly.