## N. Y. SUPERIOR COURT.

EDWARD LYNCH, survivor, etc., respondent, agt. JOHN PYNE, appellant.

*Conflicting evidence.*

Where it becomes necessary for the court to pass upon the weight of conflicting evidence, it will consider letters written by a party, and acts performed by him contradictory of his oath, as rendering such oath of no consideration.

*General Term, December,* 1876.

APPEAL from an order denying the defendant's motion for a new trial on the judge's minutes.

*G. M. Curtis,* for appellant.

*M. J. N. McCaffery,* for respondent.

CURTIS, *C. J.* — The plaintiff sues to recover for work claimed to have been performed at the request of the defendant, and for plants and flowers furnished to the defendant between January 3, 1870, and April 13, 1872.

The main question presented by the case is, whether the work was performed for the defendant, and the flowers and plants furnished to him or his wife, at his request. The defendant and his wife lived with Mr. Cambreleng during this period, in the house owned by the latter, and to which a conservatory and a garden were attached. Mr. Cambreleng, who was the father of the defendant's wife, died June 24, 1872.

The plaintiff testifies that sometimes the defendant and his

wife, and sometimes one or the other, ordered the flowers and plants in question, and that he charged them on his books to the defendant's wife and sent the bill to him; and that he called on the defendant with the bill on several occasions, but that he never promised to pay him personally.

The plaintiff called a witness, who testified that he called on the defendant many times in relation to the bill, when he would sometimes say, "I can't do any thing to-day," or would answer affirmatively when asked by witness if he should call again. But as the defendant was at this time the executor of Mr. Cambreleng's estate, it may have been that he was answering in that capacity, especially as the plaintiff was seeking to collect this same claim from that estate, and to its liability for which no question was raised. It appears that this estate was insolvent.

The defendant testified that he did not order these plants or flowers, and that the only transaction he ever had with the plaintiff's firm was the purchase of a bouquet fifteen years previous, which he paid for; that he never authorized the trusting of his wife, or knew of it; that no bill was made out to her until after her father's death; and that she attended to her father's commissions — he being advanced in years — such as making purchases for the house, and that he had heard him direct her to go and order plants, but that he never knew her to do so, except for her father. The defendant also testified that no bill was ever made out against him, and that when he first received the bill made out against his wife he notified the plaintiff that it was improperly made out against her, and that it should be made out against Mr. Cambreleng.

In examining the testimony of the plaintiff (for it will be observed that the case rests chiefly upon the testimony of the two parties) there are some circumstances that do not tend to sustain the statements of the plaintiff at the trial. For instance, the defendant, on the 23d day of June, 1873, wrote plaintiff's firm the following note:

Lynch agt. Pyne.

NEW YORK, *June* 23, 1873.

Messrs. BRIDGEMAN & Co. :

DEAR SIRS. — I am not aware that any of the articles in your bill were ordered for me or on my credit. Your bills have always been made out, rendered to, and paid by Mr. Stephen Cambreleng, and were for work done in, and plants furnished to his garden and conservatory, No. 35 Great Jones street, which plants were appraised as part of his estate. There was a bill for these very articles rendered in Mr. Cambreleng's lifetime, made out to him, and the only account ever kept by you was with him. I shall resist firmly any attempt to make me liable for any goods or labor furnished, or alleged to have been furnished by you to Mr. Cambreleng, or for his house and garden. Your claim, if any, is against Mr. Cambreleng's estate, and has already been made against his estate.

Yours truly.

J. PYNE.

In answer to this note the case admits that the plaintiff sent the following letter :

NEW YORK, *June* 26, 1873.

JOHN PYNE, Esq. :

DEAR SIR. — You have mistaken the tenor of our note in supposing that we expected to make you liable for the bill. Not at all; the bill is, as you say, against the estate of Mr. Stephen Cambreleng, and the reason why we wrote and sent to you was for the reason that, knowing you to be one of the executors, you might be able to satisfy us in regard to the payment, as being very short at present, and having waited so long, we thought that probably the estate was in such a condition now as to admit of the payment of the bill. We hope you will consider us right in this matter, and, as soon as the estate will be in a condition for payment, notify us, and you will greatly oblige,

Yours respectfully.

BRIDGEMAN & CO.

This last communication appears to be an implicit disavowal of any claim against the defendant personally for the bill, and was written at a time when the facts were fresher than at the trial in the memory of the plaintiffs. This seems to bring the case within the principle that where a party's oath is flatly contradicted by his own letters, written long previous to the commencement of the action, it is entitled to no consideration (*Boyd* agt. *Colt*, 20 *How. Pr.*, 384).

The next circumstance affecting the plaintiff's testimony arises from the affidavits made by him in the usual form, September 1, 1873 (two months and more after writing the last letter), to substantiate his claims against the estate of Mrs. Cambreleng.

By these he confirms under oath his statement in the letter that this bill in controversy was against the estate of Mr. Cambreleng. The plaintiff stated at the trial that he knew the claim was against Mr. Pyne, and believed he had no claim against Mr. Cambreleng — none whatever — but that he made the affidavits at the defendant's request, and that he took the latter to be an honorable man, and that on his statement that he would get some money he felt justified in making the affidavit.

It is probably not the first time that a claim has been sworn to and presented against the estate of a deceased person from that motive, but I am not aware that any court has held it a justification for a knowingly false affidavit. There are some other features in the case that strengthen the defendant's testimony that the bill was Mr. Cambreleng's, besides the letter and affidavits of the plaintiff. It is conceded that in July, 1871, Mr. Cambreleng's note, at ninety days, for $220.90, being for part of this bill, was taken by the plaintiff and subsequently protested.

Plaintiff's firm had attended to Mr. Cambreleng's garden, and supplied plants for his house and conservatory for a long term of years before the bills in question were incurred, and these latter were originally made out to him. No charge

appeared on the plaintiff's books against the defendant personally.

The case presented is one of those where the court must pass upon the weight of conflicting evidence (*Finch* agt. *Parker*, 49 *N. Y.*, 1). The result of the examination is a conviction that the verdict of the jury cannot be sustained. Under such circumstances the judgment must be reversed and a new trial ordered, with costs to abide the event.